**Shannon Kellie LUTHE, Plaintiff,**

v.

**THE CITY OF CAPE MAY, Sgt. William Alvarez, Ptl. Joseph Safaryn, and Andrew K. Boyt, Defendants.**

**No. CIV. A. 97–5312.**

United States District Court,
D. New Jersey.

May 25, 1999.

of Cape May, Sgt. William Alvarez, and Ptl. Joseph Safaryn.

Michael A. Sorensen, Cape May Court House, NJ, for Defendant, Andrew K. Boyt.

## OPINION

ORLOFSKY, District Judge.

Defendants' motion for summary judgment presents two novel issues of law unresolved in this Circuit. First, I must determine the appropriate legal standard to be applied to a civil rights claim for malicious prosecution brought pursuant to 42 U.S.C. § 1983 in the wake of *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and two recent Third Circuit decisions construing *Albright*, namely, *Torres v. McLaughlin*, 163 F.3d 169 (3d Cir.1998), and *Gallo v. City of Philadelphia*, 161 F.3d 217 (3d Cir.1998). Second, I must next determine whether and in what circumstances a civil rights plaintiff may maintain a malicious prosecution action based on one groundless accusation, when probable cause existed for one or more other accusations made in the same criminal complaint.

On June 8, 1996, after a domestic dispute with a former boyfriend, Plaintiff, Shannon Kellie Luthe ("Luthe"), was arrested and charged with burglary, harassment, and criminal mischief. Luthe was acquitted on all these charges on September 20, 1996. On October 29, 1997, Luthe filed a civil rights complaint pursuant to 42 U.S.C. § 1983 [1] against Defendants, the City of Cape May, Police Sergeant William Alvarez, Patrolman Joseph Safaryn, and Andrew K. Boyt, a private citizen, alleging claims for unlawful arrest, false imprisonment and malicious prosecution in violation of the Fourth and Fourteenth Amend-

Charles W. Sandman, III, Cape May Court House, NJ, for Plaintiff, Shannon Kellie Luthe.

Susanna J. Morris, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, P.C., Cherry Hill, NJ, for Defendants, the City

1. Section 1983 provides, in relevant part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
   See 42 U.S.C. § 1983.

ments, as well as unspecified state law claims asserted solely against Defendant, Boyt. Defendants, the City of Cape May and Officers Alvarez and Safaryn, have moved for summary judgment on all claims alleged against them, contending that the arrest, imprisonment and prosecution at issue were supported by probable cause, that the doctrine of qualified immunity shields the police officer/defendants from liability, and that Luthe has failed to establish municipal liability under § 1983 against the City of Cape May. Defendant, Boyt, has not moved for summary judgment. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343.[2]

For the reasons set forth below, I shall grant the motion of Officers Alvarez and Safaryn for summary judgment on Plaintiff's claims for unlawful arrest and false imprisonment because I conclude that there is no genuine issue of material fact as to whether Plaintiff's arrest and subsequent imprisonment were supported by probable cause. In addition, I shall grant the police officers' motion for summary judgment on Luthe's claim for malicious prosecution because, although Luthe can maintain her claim for malicious prosecution on the groundless felony charge of burglary when probable cause existed only as to the disorderly persons offenses of harassment and criminal mischief, the police officers are shielded from liability by the doctrine of qualified immunity. Finally, I shall grant the motion of the City of Cape May for summary judgment on Luthe's § 1983 claim because she has failed to demonstrate that her alleged constitutional injury was the result of a custom or policy of the municipality.

## I. BACKGROUND

On October 29, 1997, Luthe filed a civil rights Complaint pursuant to 42 U.S.C. § 1983, against Defendants, the City of Cape May ("Cape May"), Sergeant William Alvarez of the Cape May Police Department ("Alvarez"), Patrolman Joseph Safaryn of the Cape May Police Department ("Safaryn," collectively, "Officer Defendants"), and Andrew K. Boyt ("Boyt"), a private citizen. See Complaint, ¶¶ 3–6 (filed Oct. 29, 1997) ("Compl."). On October 1, 1998, Defendants, Cape May, Alvarez and Safaryn, moved for summary judgment. See Notice of Motion (filed Oct. 1, 1998). Luthe has asserted the following three causes of action against Cape May and the Officer Defendants: (1) unlawful arrest, Counts I and II; (2) false imprisonment, Counts I and II; and (3) malicious prosecution, Count III. See Complaint, Counts I, II, and III.[3]

The material facts and circumstances of this case are relatively undisputed. On June 8, 1996, at approximately 1:55 a.m., Luthe, who had been involved in a ten year

**2.** Section 1331 provides:
   The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.
   See 28 U.S.C. § 1331. Section 1343 provides, in relevant part:
   The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person ... [t]o recover .damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights....
   See 28 U.S.C. § 1343(a)(4).

**3.** Counts IV and V seek relief from Defendant, Boyt, exclusively, based on undisclosed state, as well as federal grounds. See Complaint at 7. Peculiarly, Count V makes allega-

tions against Alvarez and Safaryn but only "demands judgment against defendant, Andrew Boyt, individually[.]" Id. Because Luthe is the master of her Complaint, see Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), I shall treat Count V as alleging a claim against Defendant, Boyt, only. Luthe also seeks damages from Boyt in Count II for unlawful arrest and false imprisonment, and in Count III for malicious prosecution. See id. at 5–6. Boyt, however, has not filed a separate motion for summary judgment, nor has he joined in the moving Defendants' motion. Accordingly, in resolving the moving Defendants' motion for summary judgment, I intimate no opinion as to. the merits of Luthe's claims against Boyt.

"on and off" relationship with Boyt, entered Boyt's home located in Cape May, New Jersey. *See* Compl., ¶ 7; *see also* Defendants' Brief in Support of Summary Judgment ("Def.Brief"), Exh. A (Police Report); Plaintiff's Brief in Opposition to Summary Judgment ("Pl.Brief"), Exh. A (Interrogatory Answers of Plaintiff), Exh. I (Luthe Dep. at 28). "When [ ] Luthe entered [Boyt's] house[,] . . . she proceeded to Mr. Boyt's bedroom where she sat on the bed and began to talk to [him]." *See* Plaintiff's Rule 56.1 Statement ("Pl. R. 56.1") at 2. "At that moment, since the room was dark and [ ] Luthe did not before notice, [ ] Luthe realized that [ ] Boyt had another women [sic] in his bed." *Id.* The woman was Boyt's current girlfriend, Michelle Teaney. *See* Def. Brief, Exh. A. "[A]fter seeing Ms. Teaney[, Luthe] became upset." *Id.; see also* Def. Brief, Exh. I (Criminal Complaint/Warrant) (stating that "[Luthe] . . . observed [Boyt's] girl friend [sic] in the bed and started to get upset").

Regarding the events of June 8, 1996, Boyt testified:

I was sleeping. [Luthe] came in. Sat on the bed. Woke me up. I realized what was going on and who it was, and at that time I guess she realized that Michelle [Teaney] was there with me and she turned on the light. I immediately asked her to leave. Told her she had to leave. She started getting—you know, abusing Michelle verbally, calling her names. . . . I'd continuously been telling [Luthe] to leave. . . . That's when I got up, threw on a pair of shorts, and walked her to the door.

*See* Def. Brief, Exh. D (Boyt Dep.) at 23. Luthe provided a substantially similar account of the events, stating:

I sat down on the side of [Boyt's] bed and touched his leg, and spoke his name. I heard a sleeping sound that did not sound like him, and got up and turned on the light. I was surprised to see Michelle in his bed. . . . I didn't know what to do. I called him a liar. [H]e

got up, and came toward me. We both headed toward the door arguing.

*See* Pl. Brief, Exh. A.

Boyt escorted Luthe out of his home and onto the front porch. *See* Boyt Dep. at 27–28. According to Boyt's testimony, once on the front Porch, Luthe grabbed the door jam of the exterior porch door. *See id.* Boyt "grabbed her hands off the door and pushed her out[,] . . . shut the door" and locked it. *Id.* at 28–29. Boyt further testified:

I walked back inside and that's when she began banging on the door. I mean she was banging. . . . [T]his was banging trying to get in, break-the-door-down banging. . . . She was banging on the door and I told her that we were calling the police and that she better leave and she continued to bang and she broke the glass. The glass fell in. . . . She pushed it out of the frame.

*Id.* at 30–32.

After the glass in the porch door was broken, Scott Nash, Boyt's roommate, who had been sleeping in the living room, called the police. *See id.; see also* Pl. R. 56.1 at 2. "Shortly thereafter, the police arrived and Officer Safaryn[, who was] the first officer on the scene[,] took a statement from [ ] Boyt." *See* Pl. R. 56.1 at 2. Sergeant Alvarez also arrived at the scene and took Boyt's statement. *See* Def. Brief, Exh. B (Alvarez Dep.) at 14–15.

Previously, on February 20, 1996, Alvarez had answered a call regarding a disturbance at Boyt's home involving Luthe. *See* Alvarez Dep. at 12; *see also* Def. Brief, Exh. F (Police Report, dated Feb 20, 1996). Alvarez testified:

From a prior incident back in February . . . [Luthe's] MO was when she knew the police were being called that she would leave the scene . . . and go to her house.

*See* Alvarez Dep. at 12. While Alvarez was responding to the June 8, 1996, call from Boyt's home, Alvarez called Officer

Robert Sheehan and sent him to Luthe's home to await her arrival. *See id.*

In his statement to Safaryn and Alvarez, Boyt indicated that "[w]e need to teach [Luthe] that she can't continue to do this." *See* Boyt Dep. at 70. Safaryn advised Boyt that he could obtain a temporary restraining order ("TRO"). *See id.* at 63. Boyt agreed and went to the police station for this purpose. *See id.* While at the police station, Boyt filed a Domestic Violence Complaint against Luthe. *See* Def. Brief, Exh. G (Domestic Violence Complaint, dated June 8, 1996).

While Boyt was at the police station, Officer Sheehan "knocked on [Luthe's] door, and [she] let him in." *See* Pl. Brief, Exh. A. In responding to Defendants' interrogatories, Luthe testified:

> [Officer Sheehan] asked me if I was at [Boyt's] house. I said yes. He said the cops were there and I had to come down to the police department. I asked him why. He said that [Boyt] was going down there to, [sic] and we were going to get this straightened out.

*See id.* (internal quotations omitted). Luthe accompanied Officer Sheehan to the police station. *See id.*

Based on Boyt's statement, Safaryn and Alvarez filed a criminal complaint against Luthe. *See* Def. Brief, Exh. I. Specifically, the Criminal Complaint charged Luthe with violations of: (1) N.J. Stat. Ann. § 2C:18–2(a)(1), burglary; (2) N.J. Stat. Ann. § 2C:33–4(a), harassment; and (3) N.J. Stat. Ann. § 2C:17–3(a)(1), criminal mischief.[4] *See* Def. Brief, Exh. I. In addition to setting forth the charges in the Criminal Complaint, Safaryn and Alvarez also explained the grounds supporting their belief that probable cause existed to arrest Luthe. *See id.* As to the charge of burglary, Safaryn and Alvarez stated:

> Probable Cause: O[n] June 8, 1996 at 0155 hrs. I was dispatched to the Victim's home. Upon arrival the victim stated that [Luthe] enter [sic] the house and woke him up by sitting and turning on the light. [Luthe] then observed his girl friend [sic] in the bed and started to get upset. The victim was able to get her outside then [Luthe] broke out the storm window on the door.

*Id.* Safaryn and Alvarez repeated these same grounds in support of the basis for probable cause to charge Luthe with harassment and criminal mischief. *See id.*

---

4. Section 2C:18–2 provides, in relevant part: A person is guilty of burglary if, with purpose to commit an offense therein he ... [e]nters ... a structure, or a separately secured or occupied portion thereof unless the structure was at the time open to the public or the actor is licensed or privileged to enter ... [B]urglary is a crime of the third degree. *See* N.J. Stat. Ann. § 2C:18–2. Section 2C:33–4 provides, in relevant part: [A] person *commits a petty disorderly persons offense* if, with purpose to harass another, he ... [m]akes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm; [s]ubjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or [e]ngages in *any other course of alarming conduct* or of repeatedly committed acts *with purpose to alarm or seriously annoy such other person.*

*See* N.J. Stat. Ann. § 2C:33–4 (emphasis added). Section 2C:17–3 provides, in relevant part: A person is guilty of criminal mischief if he ... [p]urposely, knowingly or recklessly tampers with tangible property of another so as to endanger person or property.... Criminal mischief is a crime of the third degree if the actor purposely or knowingly causes pecuniary loss of $2,000.00 or more, or a substantial interruption or impairment of public communication, transportation, supply of water, gas or power, or other public service. Criminal mischief is a crime of the fourth degree if the actor causes pecuniary loss in excess of $500.00. It is a disorderly persons offense if the actor causes pecuniary loss of $500.00 or less. *See* N.J. Stat. Ann. § 2C:17–3. A conviction for a crime of the third degree in New Jersey, such as burglary, is punishable by a term of imprisonment of between three and five years. *See* N.J. Stat. Ann. § 2C:43–6(a)(3).

Because the Criminal Complaint charged Luthe with burglary, a crime of the third degree, punishable by a minimum term of imprisonment, *see* note 4 *supra,* the on-call municipal court judge for the City of Cape May, Judge Way, issued a warrant for Luthe's arrest and set bail in the amount of $3,000.00. *See id.; see also* Def. R. 56.1, ¶¶ 8–9. Judge Way also granted Boyt's request for a TRO.

Shortly after Safaryn obtained the arrest warrant, Luthe was arrested in the Cape May police station by Officer Shee-han. *See* Pl. Brief, Exh. A. Safaryn informed Luthe that her bail was set at $3,000.00, and transported her to the Cape May County Correctional Facility ("CMCCF"), where she was processed as a pre-trial detainee. *See id.* Approximately eight hours later, Luthe was released from the CMCCF after posting bail. *See id.*

On September 20, 1996, Luthe was tried and acquitted on all charges. *See* Pl. Brief, Exh. A (Affidavit of Shannon Luthe, dated Nov. 14, 1996). Subsequently, on October 29, 1997, Luthe filed this civil rights action.

In Count I of her Complaint, Luthe alleges that Alvarez and Safaryn "intentionally and recklessly under color of state law deprive[d][her] of her rights to be free from unreasonable searches and seizures, and did otherwise cause [Luthe] to be incarcerated without probable cause or reasonable basis ... depriving [Luthe] of those rights secured [by] ... the United States Constitution, [specifically, the Fourth and Fourteenth] Amendments[.]" *See id.* at 4. Luthe makes the same allegations against all Defendants in Count II. *See id.,* Count II. In Count III, Luthe alleges a cause of action for malicious prosecution against all Defendants for the deprivation of her rights under the Fourth and Fourteenth Amendments. *See id.,* Count III.

On October 1, 1998, Cape May and the Officer Defendants moved for summary judgment contending that: (1) Safaryn and Alvarez had probable cause to arrest, im-prison and prosecute Luthe for burglary, harassment and criminal mischief; (2) even if probable cause was lacking, Safar-yn and Alvarez are entitled to qualified immunity; and (3) Luthe has failed to state a civil rights claim against the City of Cape May. *See* Def. Brief at 6–13. Luthe opposes the motion contending that Safaryn and Alvarez did not have probable cause; that their actions were unreasonable, thereby defeating the defense of qualified immunity; and that summary judgment in favor of the City of Cape May is not yet ripe because discovery has not been completed. *See* Pl. Brief at 5–8.

## II. LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Reitz v. County of Bucks,* 125 F.3d 139, 143 (3d Cir.1997); *Hersh v. Allen Prod. Co.,* 789 F.2d 230, 232 (3d Cir.1986). In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *See, e.g., Pennsylvania Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995); *Hancock Indus. v. Schaeffer,* 811 F.2d 225, 231 (3d Cir.1987).

Under the rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the non-moving party has provided evidence to show that a question of material fact remains. Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushi-*

*ta Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion ...; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

What the non-moving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)); *see also Lujan v. National Wildlife Fed.,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ("The object of [Rule 56(e) ] is not to replace conclusory allegations of the complaint ... with conclusory allegations of an affidavit."); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992) ("[T]o raise a genuine issue of material fact ... the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather must exceed the " 'mere scintilla' threshold."), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). If the nonmoving party fails to oppose the motion by written objection, memorandum, affidavits and other evidence, the Court "will accept as true all material facts set forth by the moving party with appropriate record support." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.,* 922 F.2d 168, 175 (3d Cir.1990) (quoting *Jaroma v. Massey,* 873 F.2d 17, 21 (1st Cir.1989)).

Even where the non-moving party has failed to establish a triable issue of fact, summary judgment will not be granted unless "appropriate." Fed.R.Civ.P. 56(e); *see Anchorage Assocs.,* 922 F.2d at 175. Rule 56(e) of the Federal Rules of Civil Procedure requires that the case be evalu-ated on its merits, with summary judgment being granted for the movant only if they are entitled to a judgment as a matter of law. *See Anchorage Assocs.,* 922 F.2d at 175.

## III. DISCUSSION

### A. *Probable Cause on Counts I and II: Unlawful Arrest and False Imprisonment*

In Counts I and II, Luthe asserts two related causes of action against the Officer Defendants, specifically, unlawful arrest and false imprisonment. A defense to both of these causes of action is that the Officer Defendants acted with probable cause. *See Sharrar v. Felsing,* 128 F.3d 810, 817–18 (3d Cir.1997) (stating that, in a § 1983 action, the key element of a cause of action for unlawful arrest is that the law enforcement agent arrested the plaintiff without probable cause); *Groman v. Township of Manalapan,* 47 F.3d 628, 636 (3d Cir.1995) (stating that "an arrest based on probable cause could not become the source of a [§ 1983] claim for false imprisonment").

The Fourth Amendment prohibits a police officer from arresting and incarcerating a citizen except upon probable cause. *See* U.S. Const., amend. IV; *see also Friedland v. Fauver,* 6 F.Supp.2d 292, 306 (D.N.J.1998). Luthe contends that the Officer Defendants lacked probable cause to arrest, incarcerate, or otherwise prosecute her for the offenses of burglary, harassment and criminal mischief. *See* Pl. Brief at 5.

"Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Sharrar,* 128 F.3d at 817–18 (citing *Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)) (additional citations, internal quotations and alterations omitted). "This standard is meant to safeguard citizens from rash and unreasonable interferences with privacy

and to provide leeway for enforcing the law in the community's protection." *Id.* (citations omitted). In *Sharrar*, in addressing the issue of probable cause, the Third Circuit stated:

> In a § 1983 action the issue of whether there was probable cause to make an arrest is usually a question for the jury, but where no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate. The question is for the jury only if there is sufficient evidence whereby a jury could reasonably find that the police officers did not have probable cause to arrest.

*Sharrar*, 128 F.3d at 818 (citing *Deary v. Three Un–Named Police Officers*, 746 F.2d 185, 192 (3d Cir.1984)).

### 1. *The Arrest Warrant and Qualified Immunity*

■ The doctrine of qualified immunity protects police officers performing discretionary functions, such as arrests. *See Wilson v. Layne*, —— U.S. ——, ——, 119 S.Ct. 1692, 1696, 143 L.Ed.2d 818 (1999). Qualified immunity "shield[s officers] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sharrar*, 128 F.3d at 826 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "[I]n § 1983 cases involving alleged violations of the Fourth Amendment, ... the inquiry is whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession." *Sharrar*, 128 F.3d at 827 (citing *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam)). Police officers "who reasonably but mistakenly conclude that their conduct comports with the requirements of the Fourth Amendment are entitled to immunity." *Sharrar*, 128 F.3d at 826 (quoting *Hunter*, 502 U.S. at 227, 112 S.Ct. 534) (additional citations omitted). "In this

way, the qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Sharrar*, 128 F.3d at 826 (quoting *Hunter*, 502 U.S. at 229, 112 S.Ct. 534 (quoting *Malley*, 475 U.S. at 341, 343, 106 S.Ct. 1092)).

■ In determining whether a police officer is entitled to qualified immunity, both the existence of a clearly established right and the objective reasonableness of the officer's actions are questions of law for the Court to decide. *Sharrar*, 128 F.3d at 828; *see also Wilson*, 119 S.Ct. at 1698 (1999). "Only if the historical facts material to the latter issue are in dispute, ... will there be an issue for the jury." *Sharrar*, 128 F.3d at 828.

■ Where an arrest and the subsequent incarceration are made pursuant to a warrant, "[t]he Fourth Amendment requires that [the] arrest warrant[ ] be based upon probable cause, supported by [o]ath or affirmation...." *Kalina v. Fletcher*, 522 U.S. 118,118 S.Ct. 502, 509, 139 L.Ed.2d 471 (1997) (citations and internal quotations omitted). Whether a police officer who applied for an arrest warrant is protected by qualified immunity from liability under § 1983 depends upon whether "the warrant application is so lacking in indicia of probable cause as to render [the] offic[er's] belief in its existence unreasonable[.]" *Malley v. Briggs*, 475 U.S. 335, 344–45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *see also Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir.1995) (citing *Malley* and stating that police officer is entitled to qualified immunity where grounds for probable cause stated in warrant application were objectively reasonable). "[T]he standard for determining the reasonableness of an official's belief in the existence of probable cause is whether a reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he therefore should not have applied for the war-

rant under the conditions." *Orsatti,* 71 F.3d at 483 (citing *Malley,* 475 U.S. at 345, 106 S.Ct. 1092; *but see Lippay v. Christos,* 996 F.2d 1490, 1500–01 (3d Cir.1993)) (holding that "[i]n order to prevail on [a § 1983] claim [for unlawful arrest], [a plaintiff] needed to satisfy the test enunciated in *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), which requires a showing that the maker of the affidavit either stated a deliberate falsehood or acted with a reckless disregard for the truth; [p]roof of negligence or innocent mistake is insufficient[, a plaintiff must] ... demonstrate that [the police officer] acted with reckless disregard for the truth, [as well as] prove that [the officer] made the statements in his affidavits with a high degree of awareness of their probable falsity") (quoting *Garrison v. Louisiana,* 379 U.S. 64, 74, 85, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)) (internal quotations omitted). "Because the qualified immunity doctrine provides the official with immunity from suit, not simply trial, the [D]istrict [C]ourt should resolve any immunity question at the earliest possible stage of the litigation." *Orsatti,* 71 F.3d at 483 (citations omitted); *accord Wilson,* 119 S.Ct. at 1697 (1999); *Conn v. Gabbert,* —— U.S. ——, —— – ——, 119 S.Ct. 1292, 1295–96, 143 L.Ed.2d 399 (1999).

### 2. *Luthe's Claims for Unlawful Arrest and False Imprisonment*

Luthe was arrested on charges of burglary, harassment and criminal mischief. "In order for the police to have properly arrested [Luthe], they must have had probable cause on the [burglary] or the disorderly [persons] charges" of harassment and criminal mischief. *Groman,* 47 F.3d at 635. "[A]n arrest based on probable cause [can]not become the source of a claim for false imprisonment." *Id.* at 636 (citing *Baker v. McCollan,* 443 U.S. 137, 142, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). The parties vehemently dispute whether probable cause existed for Safaryn and Alvarez to arrest and incarcerate Luthe on the charge of burglary. Even assuming

that the police lacked probable cause to arrest Luthe on the felony charge of burglary, based on the undisputed facts in the summary judgment record, I conclude that Safaryn and Alvarez clearly had probable cause to arrest Luthe on the charges of harassment and criminal mischief. Accordingly, for the reasons that follow, the Officer Defendants are entitled to summary judgment on Counts I and II of the Complaint.

Under New Jersey law, "[a] person is guilty of criminal mischief if [she] ... [p]urposely, knowingly or recklessly tampers with tangible property of another so as to endanger [a] person or property." *See* N.J. Stat. Ann. § 2C:17–3(a)(2). Criminal mischief "is a disorderly persons offense if the actor causes pecuniary loss of $500.00 or less." *Id.* A person commits the petty disorderly offense of harassment "if, with purpose to harass another, [she] ... [e]ngages in any ... course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." *See* N.J. Stat. Ann. § 2C:33–4(c).

In this case, Boyt informed Safaryn and Alvarez that, after Luthe had been removed from his home, she began to bang on the porch door. Boyt testified:

> I walked back inside and that's when she began banging on the door. I mean she was banging.... [T]his was banging trying to get in, break-the-door-down banging.... She was banging on the door and I told her that we were calling the police and that she better leave and she continued to bang and she broke the glass. The glass fell in.... She pushed it out of the frame.

*See* Boyt Dep. at 30–32.

██ "When a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause to arrest." *Sharrar,* 128 F.3d at 818 (citations omitted). When Boyt informed Safaryn and Alvarez that Luthe had harassed him and Ms. Teaney, had repeated-

ly banged on the porch door in a threatening manner and had broken the porch door window, the officers had probable cause to arrest Luthe for harassment and criminal mischief. *Id.* Thus, when Safaryn and Alvarez applied for the arrest warrant on the basis of Boyt's statements, probable cause to arrest Luthe on these offenses similarly existed.

Luthe contends that Alvarez was aware at the time of her arrest that Boyt and Luthe were still involved in a relationship and that "no offense had been committed...." *See* Pl. Brief at 5, Exh. H (Affidavit of Reetta Alimo (dated Sept. 17, 1998)). Alvarez's knowledge of the "on and off" relationship between Boyt and Luthe may undermine the reasonableness of his belief that probable cause existed as to whether Luthe was licensed to enter Boyt's home, thus precluding the commission of burglary. *But see* Section III.B.3 *infra.* This knowledge, however, did not prevent Alvarez and Safaryn from reasonably relying on Boyt's statement that Luthe had harassed him and Ms. Teaney and had broken the porch door window. Even if Safaryn and Alvarez lacked probable cause to arrest Luthe for burglary, Luthe's arrest was lawful because there was probable cause sufficient to support the arrest warrant on the harassment and criminal mischief charges.

▮ Whether or not Luthe actually harassed Boyt or recklessly damaged the porch window is irrelevant to the issue of whether Safaryn and Alvarez could have reasonably believed that probable cause existed to arrest Luthe on these charges. *See Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)

(stating that "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which [she] is arrested is irrelevant to the validity of the arrest"). The "degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest." *Gerstein v. Pugh*, 420 U.S. 103, 119–123, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *see also Ornelas v. United States*, 517 U.S. 690, 695–696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

▮ Therefore, I find that when Officer Sheehan arrested Luthe at the station house on June 8, 1996, pursuant to the arrest warrant, the arrest was lawful because probable cause existed for the offenses of harassment and criminal mischief. Consequently, by definition, Luthe cannot maintain a claim for unlawful arrest against the Officer Defendants. Accordingly, I conclude that the Officer Defendants are entitled to summary judgment on those portions of Counts I and II seeking to assert such a claim. *Sharrar*, 128 F.3d at 817–18 (stating that, in a § 1983 action, the key element of an unlawful arrest cause of action is that the law enforcement agent arrested the plaintiff without probable cause). Similarly, because "an arrest based on probable cause [can]not become the source of a [§ 1983] claim for false imprisonment[,]" I conclude that the Officer Defendants are entitled to summary judgment on Luthe's false imprisonment claim, as well. *Groman*, 47 F.3d at 636.[5]

---

**5.** This conclusion is not diminished by the fact that harassment and criminal mischief are disorderly persons offenses, which generally do not trigger the issuance of an arrest warrant, incarceration in a county correctional facility, and the setting of bail. *See Klesh v. Coddington*, 295 N.J.Super. 1, 3, 684 A.2d 504 (App.Div.1996). The New Jersey Criminal Code does not limit an arresting officer's authority based on the distinction between disorderly persons offenses and more serious offenses. *See State v. Vonderfecht*, 284 N.J.Super. 555, 559–60, 665 A.2d 1145 (App. Div.1995). A criminal complaint charging an individual with a disorderly persons offense "may be attended by one or more of the liberty deprivations characteristic of [more serious] criminal actions ... for example, arrest, a bail requirement, booking and fingerprinting, incarceration or the imposition of substantial fine or jail sentence." *Klesh*, 295 N.J.Super. at 2–4, 684 A.2d at 505–06.

### B. *Malicious Prosecution*

█ In Count III of the Complaint, Luthe alleges a claim for malicious prosecution. Generally, where a criminal proceeding has been initiated based on probable cause, a civil rights plaintiff cannot maintain a claim for malicious prosecution. *See Montgomery v. DeSimone*, 159 F.3d 120, 124 (3d Cir.1998) (holding that in order to prevail on a malicious prosecution claim under § 1983, a plaintiff must establish, among other things, the absence of probable cause for the initiation of the proceedings against her). As noted above, at the time the Officer Defendants initiated the criminal prosecution against Luthe, probable cause existed on the charges of harassment and criminal mischief. *See* Section III.A *supra.* The question remains, however, whether the initiation of the criminal prosecution on the felony charge of burglary was supported by probable cause. If probable cause existed on the burglary charge, Luthe's claim for malicious prosecution must fail. *See Montgomery*, 159 F.3d at 124. If, however, the Officer Defendants did not have probable cause to initiate the criminal prosecution on the charge of burglary, I must determine whether the existence of probable cause for the disorderly persons offenses is sufficient to shield the Officer Defendants from liability on Luthe's claim for malicious prosecution on the felony charge of burglary. Finally, assuming that probable cause for the burglary charge did not exist, I must decide whether Safaryn and Alvarez are entitled to summary judgment on Luthe's claim for malicious prosecution on the basis of qualified immunity.

### 1. *Legal Standard Governing § 1983 Claims for Malicious Prosecution*

"A section 1983 malicious prosecution action 'requires that: (1) the defendant[s] initiate a criminal proceeding; (2) which end[s] in plaintiff's favor; (3) which was initiated without probable cause; and (4) the defendant[s] act maliciously or for a purpose other than bringing the [criminal] defendant to justice.' " *Akins v. Deptford Township*, 1993 WL 147343, at *5 (D.N.J. May 3, 1993) (quoting *Lee v. Mihalich*, 847 F.2d 66, 69–70 (3d Cir.1988)). In *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), Justice Rehnquist, writing for the plurality, held that a plaintiff's claim for malicious prosecution arising out of an arrest and incarceration based on a warrant unsupported by probable cause did not trigger the plaintiff's substantive due process rights, rather, the plaintiff's constitutional claim, if any, implicated only the Fourth Amendment. *See id.* at 274, 114 S.Ct. 807.

In *Torres v. McLaughlin*, 163 F.3d 169 (3d Cir.1998), the Third Circuit read Justice Rehnquist's plurality opinion narrowly, concluding that the Fourth Amendment only protects individuals from malicious criminal prosecutions from the time of the arrest until the time of pre-trial detention. *See Torres v. McLaughlin*, 163 F.3d 169, 174 (3d Cir.1998) (holding that in § 1983 claims for malicious prosecution, "the Fourth Amendment [applies] to those actions which occur between arrest and pre-trial detention"). Consistent with this narrow reading of *Albright*, the Third Circuit concluded that § 1983 claims for malicious prosecution arising out of post-conviction incarceration are cognizable as violations of the plaintiff's substantive due process rights. *Torres*, 163 F.3d at 172–74 (construing plurality opinion in *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)). Therefore, because Luthe was never subjected to post conviction incarceration, *see* Luthe Aff., ¶ 9, and her § 1983 claim for malicious prosecution seeks damages for the "initiation" and "continuation" of the criminal prosecution, *see* Compl., ¶ 6, I must analyze Luthe's claim for malicious prosecution under the Fourth Amendment. *Cf. Torres*, 163 F.3d at 174.

In *Gallo v. City of Philadelphia*, 161 F.3d 217 (3d Cir.1998), decided eight days prior to *Torres*, the Third Circuit wrote:

*Albright* implies that prosecution without probable cause is not, in and of itself, a constitutional tort. Instead, the constitutional violation is the deprivation of liberty accompanying the prosecution. Thus, ... a plaintiff asserting a malicious prosecution claim must show some deprivation of liberty consistent with the concept of "seizure" [under the Fourth Amendment].

*Gallo,* 161 F.3d at 222 (internal quotations, footnote and citations · omitted). Thus, *Gallo* makes it clear that a necessary predicate for the elevation of a claim for malicious prosecution from a mere tort to a constitutional violation, is the presence of state action resulting in a seizure within the meaning of the Fourth Amendment.

In discussing the importance of the Fourth Amendment "seizure" requirement, the Third Circuit observed that *Albright* "casts doubt on the holding of ... *Lee,*" *Gallo,* 161 F.3d at 221. The Third Circuit went on to say that *Albright* "suggests that a plaintiff would not need to prove all of the common law elements of [malicious prosecution] in order to recover in federal court." *See Gallo,* 161 F.3d at 222 n. 6. Specifically, the Third Circuit observed that "if the harm alleged is a seizure lacking probable cause, it is unclear why a plaintiff would have to show that the police acted with malice." *Id.*

██ Footnote 6 in *Gallo,* however, is dicta; and while the *Gallo* court suggested that the continued validity of the *Lee* standard was suspect, the Third Circuit did not abandon the standard. Rather, it merely held that a "[D]istrict [C]ourt [must] focus[ ] on the seizure issue in evaluating [a § 1983 malicious prosecution] claim." *Gallo,* 161 F.3d at 222. Therefore, in reconciling *Albright, Torres,* and *Gallo* with *Lee,* to state a § 1983 claim for malicious prosecution under the Fourth Amendment, I conclude that a plaintiff must demonstrate: (1) the defendants initiated a criminal proceeding against the plaintiff; (2) which resulted in a seizure; (3) the criminal prosecution ended in plaintiff's favor;

(3) the criminal prosecution was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the criminal defendant to justice. *Lee,* 847 F.2d at 69–70; *see Gallo,* 161 F.3d at 222.

██ In this case, it is undisputed that a criminal proceeding was initiated against Luthe, and that it was terminated in her favor. *See* P. Brief, Exh. A. In addition, in *Gallo,* the Third Circuit embraced the broad definition of "seizure" set forth in Justice Ginsburg's concurrence in *Albright,* and stated that an accused released on bail "is scarcely at liberty; [she] remains apprehended, arrested in [her] movements, indeed 'seized' for trial, so long as [she] is bound to appear in court and answer the state's charges." *Gallo,* 161 F.3d at 223 (quoting and adopting *Albright,* 510 U.S. at 279, 114 S.Ct. 807 (Ginsburg, J., concurring)). Therefore, because Luthe was released on bail and required to appear for trial on September 20, 1996, to answer the charges against her, there clearly was a continuing "seizure." *See* Pl. Brief, Exh. A. Thus, the· only remaining elements to be considered under the *Gallo/Lee* standard are whether probable cause existed to initiate the criminal prosecution, and whether the Officer Defendants acted for a purpose other than bringing Luthe to justice. *Lee,* 847 F.2d at 70.·

2. *Malicious Prosecution and Probable Cause*

██ In Section III.A *supra,* I determined that probable cause existed to justify the arrest and incarceration of Luthe on the charges of harassment and criminal mischief. Because probable cause on these charges was sufficient to defeat Luthe's claims for unlawful arrest and false imprisonment, I did not consider whether probable existed to arrest Luthe on the felony charge of burglary. *See* Section III.A; *cf. Groman,* 47 F.3d at 635. It is well-settled that where a crimi-

nal proceeding has been initiated based on probable cause, a civil rights plaintiff cannot maintain a claim for malicious prosecution. *See Montgomery,* 159 F.3d at 124. The law of this Circuit, however, is less clear about whether the existence of probable cause on the charges of harassment and criminal mischief defeats Luthe's cause of action for malicious prosecution on the burglary charge. The Third Circuit has not decided "[w]hether and in what circumstances a plaintiff may maintain a malicious prosecution action based on one groundless accusation, when probable cause existed for one or more other accusations made concurrently...." *Rivera–Marcano v. Normeat Royal Dane Quality A/S,* 998 F.2d 34, 38 (1st Cir.1993) (discussing without deciding the issue); *see Posr v. Doherty,* 944 F.2d 91 (2d Cir.1991) (discussing and deciding the issue). If the Officer Defendants had probable cause to prosecute Luthe on the charge of burglary, under *Montgomery,* they are entitled to summary judgment and I need not resolve this issue. If, however, the Officer Defendants lacked probable cause to prosecute Luthe for burglary, I must determine whether Luthe can maintain a cause of action for malicious prosecution as to the burglary charge where probable cause existed on the concurrent charges of harassment and criminal mischief.

### a. *Probable Cause and Burglary*

The parties vigorously contest the existence of probable cause to arrest and incarcerate Luthe on the charge of burglary. Generally, in "a § 1983 action the issue of whether there was probable cause ... is usually a question for the jury...." *Sharrar,* 128 F.3d at 818. Where, however, "no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate." *Id.* While the parties may disagree about the legal conclusion of whether probable cause existed for the charge of burglary, the facts underlying this legal conclusion are undisputed. Thus, the issue is ripe for summary judgment.

■ Under New Jersey law, "[a] person is guilty of burglary if, *with purpose to commit an offense therein* [she] ... [e]nters ... a structure, or a separately secured or occupied portion thereof unless the structure was at the time open to the public or the actor is licensed or privileged to enter[.]" *See* N.J. Stat. Ann. § 2C:18–2 (emphasis added). Where the actor has the requisite state of mind, the crime of burglary is complete upon entry. *See State v. Jijon,* 264 N.J.Super. 405, 624 A.2d 1029 (App.Div.1993).

■ In applying for the arrest warrant on the burglary charge, Safaryn and Alvarez made the following sworn statement of probable cause that Luthe entered Boyt's home with the purpose of harassing him and Ms. Teaney:

> Probable Cause: O[n] June 8, 1996 at 0155 hrs. I was dispatched to the [Boyt's] home. Upon my arrival [Boyt] stated that the Defendant enter [sic] the house and woke him up by sitting and turning on the light. The Defendant then observed [Boyt's] girl friend [sic] in the bed *and started to get upset.* [Boyt] was able to get her outside then the defendant broke the storm window on the door.

*See* Def. Brief, Exh. I (emphasis added). This statement of "probable cause" is insufficient to establish the existence of probable cause on the charge of burglary because, on its face, it fails to demonstrate that Luthe had formed the requisite intent to harass Boyt prior to entering his home on June 8, 1996. Rather, this statement of probable cause merely establishes that Luthe began to harass Boyt and Ms. Teaney after finding Ms. Teaney in Boyt's bed.

This conclusion is consistent with other evidence in the summary judgment record. Both Safaryn and Alvarez, as well as Boyt, testified that Luthe only "became upset" after seeing Ms. Teaney in Boyt's bed. *See* Alvarez Depo. at 9, 14–15; Safaryn

Dep. at 32–33; Boyt Dep. at 23. Specifically, Boyt, the purported victim of the burglary, testified:

> [Luthe w]oke me up. I realized what was going on and who it was and at that time I guess [Luthe] realized that Michelle [Teaney] was there with me and she turned on the light. I immediately asked her to leave. Told her she had to leave. She started getting—you know, abusing Michelle verbally, calling her names ... started getting violent and it seemed like to me ... she was getting real heated....

See Boyt Dep. at 23. Clearly, Luthe could not have entered Boyt's home for the purpose of harassing him and Ms. Teaney, when, by Boyt's uncontroverted testimony, she was surprised to find Ms. Teaney there. While her unprivileged entry may have been a trespass, it certainly was not a burglary.

Therefore, based on the undisputed facts in the summary judgment record, I find that, at the time they applied for the arrest warrant, Safaryn and Alvarez did not possess "facts ... sufficient to warrant a prudent man in believing that [Luthe] had committed" the offense of burglary. *Sharrar*, 128 F.3d at 817–18. Accordingly, Luthe's arrest on the charge of burglary was not supported by probable cause.

### b. *Applying the Rule of Posr v. Doherty*

Having determined that the Officer Defendants lacked probable cause to prosecute Luthe on the charge of burglary, I must now decide whether Luthe can maintain a cause of action for malicious prosecution on the burglary charge where probable cause existed on the concurrent charges of harassment and criminal mischief. In *Posr v. Doherty*, 944 F.2d 91 (2d Cir.1991), the Second Circuit squarely addressed this issue, noting that, in § 1983 claims for malicious prosecution involving questions of probable cause, there is a "need to separately analyze the charges claimed to have been maliciously prosecuted." *Id.* at 100.

In *Posr*, the plaintiff brought a § 1983 action claiming, among other things, that the defendant police officers had maliciously prosecuted him for disorderly conduct, resisting arrest and assaulting an officer. *See id.* at 100. The issue of probable cause was tried to a jury. *See id.* The District Court "in response to a question from the jury during its deliberations, ... instructed that if the jury found probable cause supporting any of the three charges[,] ... no liability for malicious prosecution could be found as to any of the charges filed." *Id.* The jury found for the defendants on the malicious prosecution claim, and the Second Circuit reversed, finding error in the District Court's instruction. *Id.* The Second Circuit reasoned:

> As disorderly conduct is a lesser charge than resisting arrest and assaulting an officer, ... we should not allow a finding of probable cause on this charge to foreclose a malicious prosecution cause of action on charges requiring different, and more culpable, behavior. If the rule were the one followed by the [D]istrict [C]ourt, an officer with probable cause as to a lesser offense could tack on more serious, unfounded charges which would support a high bail or a lengthy detention, knowing that the probable cause on the lesser offense would insulate him from liability for malicious prosecution on the other offenses.

*Id.; cf. DeLaurentis v. City of New Haven*, 220 Conn. 225, 597 A.2d 807, 821 (1991) (collecting cases, and citing *Reed v. Taylor*, 128 Eng.Rep. 472 (CP 1812), for the proposition that "if a man prefers an indictment containing several charges, whereof for some there is, and for others there is not probable cause, this will support a count for preferring that indictment without probable cause") (internal alterations omitted); *cf. also Janetka v. Dabe*, 892 F.2d 187 (2d Cir.1989) (analogized in *Posr*); *Graebe v. Falcetta*, 726 F.Supp. 36 (E.D.N.Y.1989) (analyzing charges separately for purposes of "favorable termi-

nation" prong of malicious prosecution standard).

■ I find the Second Circuit's analysis in *Posr* persuasive and of particular relevance to the facts of this case. Here, the arrest for burglary was unsupported by probable cause. In addition, the burglary charge was far more serious than the disorderly persons offenses of harassment and criminal mischief. In addition, unlike the disorderly persons offenses, the felony offense of burglary supported "a high bail [and] lengthy detention[,]" and involved "different, and more culpable, behavior." *Posr,* 944 F.2d at 100. Therefore, I conclude that the existence of probable cause to arrest Luthe on the charges of harassment and criminal mischief does not prevent her from maintaining a cause of action for malicious prosecution on the baseless charge of burglary.

### 3. *Qualified Immunity*

■ "When a police officer [initiates a criminal prosecution] without probable cause, the officer may be liable in a civil rights suit for damages[,]" unless shielded by the doctrine of qualified immunity. *Orsatti,* 71 F.3d at 483 (citations omitted); *see also Sharrar,* 128 F.3d at 826; *accord Wilson,* 119 S.Ct. 1692 (1999); *Hunter,* 502 U.S. at 227, 112 S.Ct. 534. As stated previously in Section III.A.1, law enforcement officials who "reasonably but mistakenly" conclude that probable cause exists to initiate a criminal prosecution are entitled to qualified immunity. *Orsatti,* 71 F.3d at 483. "[T]he qualified immunity doctrine 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (citing *Malley,* 475 U.S. at 345, 106 S.Ct. 1092); *see also Hunter,* 502 U.S. at 229, 112 S.Ct. 534. Applying this standard to the facts of this case, although the criminal complaint and affidavit failed to set forth facts establishing the existence of probable cause on the charge of burglary, I cannot conclude that the "warrant application [was] 'so lacking

in indicia of probable cause as to render official belief in its existence unreasonable[.]'" *Orsatti,* 71 F.3d at 483 (quoting *Malley,* 475 U.S. at 341, 106 S.Ct. 1092).

Prior to the events of June 8, 1996, Alvarez had previously been called to Boyt's home in response to a disturbance involving Luthe. *See* Alvarez Dep. at 12; *see also* Def. Brief, Exh. F (Police Report, dated Feb 20, 1996). Regarding the February 20, 1996, disturbance, Alvarez testified:

> Q. [By Mr. Sandman] You were there in February with some other altercation that involved Shannon [Luthe]. Did any charges or TRO come from that February incident?
> A. A warning about a defiant trespassing came out of that incident with Ms. Luthe.
>
> .    .    .    .    .
>
> Q. Can you explain to me -
> A. Under the statute [sic] defiant trespass you receive notification by the police or actual owner of the property that you are not welcome to return to the property. That was given to Ms. Luthe by Patrolman Sheehan [in February, 1996]. He went over and talked to Shannon.
>
> .    .    .    .    .
>
> Q. And what is th[e] consequence that you warn them of?
> A. That they're going to be charged with defiant trespass.

*See* Alvarez Dep. at 17–19.

In addition to the defiant trespass warning, Alvarez filed a police report following the February 20, 1996, incident, which stated:

> Upon arrival [Boyt] stated that Shannon Luthe an old girlfriend was phoning and coming over his house when she was not asked to. . . . [Boyt] didn't want to sign a TRO at this time.

*See* Def. Brief, Exh. F (Police Report, dated Feb. 20, 1996). Alvarez also assisted Boyt in filing a domestic violence re-

port, stating that Luthe had harassed him on February 20, 1996. *See id.*

With the February 20, 1996, incident in mind, *see* Alvarez Dep. at 12, Alvarez and Safaryn arrived at Boyt's home on June 8, 1996. After Boyt recounted the incident for Alvarez and Safaryn, Boyt stated:

[S]omething needs to be done. She needs to realize that she can't continue to do this.... We need to do something about this. We need to teach her that she can't continue to do this.

*See* Boyt Dep. at 34, 70. Consequently, Boyt filed another domestic violence report and a complaint seeking a temporary restraining order. *See* Def. Brief, Exh. G.

It is apparent that in giving his statement to Safaryn and Alvarez, Boyt linked the events of June 8, with the events of February 20, 1996. Although there was no indication that Luthe entered Boyt's home on June 8, 1996 with the intent to harass him and Ms. Teaney, *see* Section III.B.2.a *supra*, based on Boyt's statement and Alvarez's previous dealings with Luthe on February 20, 1996, Safaryn and Alvarez could have reasonably but mistakenly believed that Luthe had such a purpose. While Safaryn's and Alvarez's judgment as to the existence of probable cause on the charge of burglary was mistaken, it was not objectively unreasonable, plainly incompetent, or an intentional violation of the law. *Malley*, 475 U.S. at 345, 106 S.Ct. 1092; *see also Wilson*, 119 S.Ct. 1692, 1698 (1999); *Hunter*, 502 U.S. at 229, 112 S.Ct. 534; *Sharrar*, 128 F.3d at 828 (stating that "whether the actions of the officers were objectively reasonable" is for the Court to decide).

Luthe contends that, because Alvarez "had personal knowledge that Andy Boyt and Shannon Luthe were still seeing each other just prior to June 8, 1996[,]" Pl. Brief at 6, Alvarez could not have reasonably believed that probable cause existed on the charge of burglary. *See* Pl. Brief, Exh. H. In support of this contention, Luthe submitted the affidavit of Reetta Ann Alimo, in which she stated that Alva-

rez admitted that "he and the other officers had previously seen Andy's truck parked at the bank parking lot, which is diagonally across the street from Shannon Luthe's home[, and that] ... he knew Andy [Boyt] was still seeing Shannon [Luthe], after they supposedly broke up." *Id.,* ¶ 3. In addition, Luthe contends that Scott Nash's municipal court testimony, stating that it was not unusual for Luthe to enter Boyt's home, further demonstrates the unreasonableness of Alvarez's belief that probable cause existed on the burglary charge. *See* Pl. Brief at 7, Exh. B.

Contrary to Luthe's contentions, Ms. Alimo's affidavit does not render objectively unreasonable Safaryn's and Alvarez's belief that probable cause existed on the charge of burglary. Alvarez testified that he determined at the scene that probable cause existed for the burglary charge. *See* Alvarez Dep. at 33 (stating that "[t]he charge of burglary would be the charge"). As noted above, *see* Section III.A.2 *supra*, Ms. Alimo's statements go to the issue of whether Luthe had a privilege or license to enter Boyt's home. On this issue, Alvarez testified that Boyt informed him at the scene that Luthe had "no right or legal authority to be [in his house] and she wasn't invited." *See* Alvarez Dep. at 27; *see also* Boyt Dep. at 34 (stating that "I ... told him that she wasn't invited"); Safaryn Dep. at 33–35. Thus, while Alvarez may have known that Boyt and Luthe were "seeing each other" just prior to June 8, 1996, on that night Boyt informed Alvarez at the scene that Luthe was not licensed or privileged to enter his home uninvited.

Similarly, Scott Nash's municipal court testimony on this issue is equivocal at best. *See* Pl. Brief, Exh. B (Transcript of Trial, Testimony of Scott Nash, dated Sept. 20, 1996). In response to cross examination, Nash testified:

Q. [By Mr. Sandman] It didn't seem unusual to you though that [Luthe] would just walk in like that, did it?

A. Sometimes it did and sometimes it didn't.

*Id.* Again, while Luthe may have previously been welcome in Boyt's home, on June 8, 1996, Boyt informed Alvarez and Safaryn that she was an uninvited intruder. Nash's testimony does not cast doubt on this conclusion. Rather, it merely demonstrates that there were times when Luthe was not licensed to enter Boyt's home uninvited.

Finally, Alvarez's subjective beliefs as to the relationship between Boyt and Luthe and whether or not Luthe was privileged to enter Boyt's home are irrelevant to the question of whether Safaryn and Alvarez are entitled to qualified immunity. *Sharrar,* 128 F.3d at 826 (stating that "the officer's subjective beliefs about the legality of his or her conduct generally are irrelevant") (quoting *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (additional citations and internal quotations omitted); *see also Orsatti,* 71 F.3d at 483 (stating that the Court must apply a "standard of objective reasonableness"). In light of the Officer Defendants' previous experience with Luthe and Boyt's statements to Safaryn and Alvarez at the scene, I conclude that the warrant application on the charge of burglary was not "so lacking in indicia of probable cause as to render official belief in its existence [objectively] unreasonable." *Orsatti,* 71 F.3d at 483 (quoting *Malley,* 475 U.S. at 341, 106 S.Ct. 1092).

Therefore, because I have found that Safaryn and Alvarez reasonably, but mistakenly, believed that probable cause existed to prosecute Luthe on the charge of burglary, I conclude that they are entitled to qualified immunity on Luthe's claim for malicious prosecution. Accordingly, I shall grant the Officer Defendants' motion for summary judgment on Count III of the Complaint.

### C. *Municipal Liability*

■ Because municipal defendants, such as the City of Cape May, "do not enjoy immunity from suit—either absolute or qualified—under § 1983[,]" *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), I must determine whether Cape May, like Alvarez and Safaryn, is entitled to summary judgment on Counts I, II and III of the Complaint. Cape May contends that summary judgment is appropriate because Luthe "has not identified any unlawful policy or custom ... attributed ... to the City itself." *See* Def. Brief at 14. I agree.

■ Under § 1983, municipalities "cannot be held liable under a theory of respondeat superior; municipal liability only arises when a constitutional deprivation results from an official custom or policy." *Montgomery,* 159 F.3d at 126 (citing *Monell v. Dep't of Social Servs. of the City of New York,* 436 U.S. 658, 691–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "[A] municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury." *Leatherman,* 507 U.S. at 166, 113 S.Ct. 1160. Municipal "policies" or "customs" for § 1983 purposes are such "practices of [government] officials as are so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Sostarecz v. Misko,* 1999 WL 239401, at *9 (E.D.Pa. Mar.26, 1999) (quoting *Monell,* 436 U.S. at 691, 98 S.Ct. 2018) (internal alterations omitted).

In the Complaint, Luthe alleges that the "City of Cape May did intentionally and recklessly under color of State law deprive the Plaintiff of her right to be free from unreasonable searches and seizures, did intentionally cause Plaintiff to be incarcerated without probable cause or reasonable basis thereby depriving Plaintiff of those rights secured pursuant to the United States Constitution...." *See* Compl., ¶ 12. Luthe makes no other allegations against Cape May in the Complaint. Indeed, the summary judgment record is devoid of even a scintilla of evidence tending to demonstrate the existence of a custom or policy "with the force of law" causing Luthe's alleged constitutional injury.

Aware of this dearth of evidence in the summary judgment record, Plaintiff's counsel argues:

[Plaintiff's claims against Cape May are] not yet ripe for Summary judgment in [sic] depositions of both Sgt. Alvarez and Officer Safayrn [sic], and through Notice to Produce, Plaintiff has attempted to obtain information about any protocol policies [sic] or custom [sic] of the City of Cape May Police Department which caused Plaintiff's civil rights to be violated. To date defense has provided no response to said requests. Plaintiff, therefore, requests that the Court deny this point ... as required discovery was not provided which would allow the Plaintiff and the Court to explore this issue.

*See* Pl. Brief at 8–9 (citations omitted). Contrary to counsel's contention, however, pre-trial factual discovery concluded on June 12, 1998. *See* Scheduling Order (filed Jan. 22, 1998). Plaintiff's counsel has sought no extension of discovery, nor has he filed any motion to compel Cape May to produce the requested discovery.

Even if the Court were to consider counsel's request as an application to adjourn the motion for summary judgment pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, the request must be denied. Rule 56(f) of the Federal Rules of Civil Procedure provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the [C]ourt may refuse the application for [summary] judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f). "Rule 56(f) clearly requires that an affidavit be filed [in which] a party indicate[s] to the district court its need for discovery, what material facts it hopes to uncover and why it has not previously discovered the information." *Radich v. Goode*, 886 F.2d 1391, 1394 (3d Cir. 1989). " 'The purpose of the affidavit is to ensure that the nonmoving party is invoking the protection of Rule 56(f) in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition.' " *Id.* (quoting *First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375 (D.C.Cir.1988)). Failure to file such an affidavit "is usually fatal." *Pastore v. Bell Telephone Co.*, 24 F.3d 508, 511 (3d Cir.1994) (citing *Falcone v. Columbia Pictures Indus.*, 805 F.2d 115, 117 n. 2 (3d Cir.1986)).

■ Therefore, because Luthe has failed to support her request for additional discovery with an affidavit of counsel as required by Rule 56(f), and because the summary judgment record contains no evidence from which a trier of fact could find that Cape May had a policy or custom resulting in Luthe's alleged constitutional injury, I conclude that Cape May is entitled to summary judgment on Counts I, II, and III of the Complaint.[6]

## IV. CONCLUSION

For the reasons set forth above, I shall grant the motion of the Officer Defendants for summary judgment because the June 8, 1996, arrest and imprisonment of Luthe was supported by probable cause, and because Officers Alvarez and Safaryn are entitled to qualified immunity on Luthe's § 1983 claim for malicious prosecution. In addition, because Luthe has failed to demonstrate that her alleged constitutional injury was the result of a custom or policy of the City of Cape May, I shall grant Cape May's motion for summary judgment. The Court shall enter an appropriate order.

6. Having granted the motion for summary judgment of Defendants, Cape May, Alvarez and Safaryn, on Counts I, II and III of the Complaint, all that remains of Luthe's Complaint are her claims against Boyt for unlawful arrest and false imprisonment, Counts II, IV and V; for malicious prosecution, Count III; and for undisclosed state law causes of action, Count IV.

## ORDER

This matter having come before the Court on the motion of Defendants, the City of Cape May, Sgt. William Alvarez, and Ptl. Joseph Safaryn, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, Susanna J. Morris, Esq., Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, P.C., appearing on behalf of the moving Defendants, and Charles W. Sandman, III, Esq., appearing on behalf of Plaintiff, Shannon Kellie Luthe, and Michael A. Sorensen, Esq., appearing on behalf of Defendant, Andrew K. Boyt; and,

The Court having considered the submissions of the parties, for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 25th day of May, 1999, hereby ORDERED that the motion of Defendants, the City of Cape May, Sgt. William Alvarez, and Ptl. Joseph Safaryn, for summary judgment on Counts I, II and III of the Complaint is GRANTED.