55 N.J. 534 (1970)
264 A.2d 34
THOMAS WILLIS, ET AL., PLAINTIFFS-RESPONDENTS,
v.
DEPARTMENT OF CONSERVATION AND ECONOMIC DEVELOPMENT, ET AL., DEFENDANTS-APPELLANTS. TOMI WILLIS, ET AL., PLAINTIFFS-RESPONDENTS,
v.
ROBERT A. ROE, ET AL., DEFENDANTS-APPELLANTS.
The Supreme Court of New Jersey.
Argued September 24, 1969.
October 6, 1969.
Decided April 20, 1970.
*535 Mr. Stephen Skillman, Deputy Attorney General, argued the cause for appellants (Mr. Walter R. Davis, Jr., Deputy Attorney General, on the brief; Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
Mr. William J. McGovern argued the cause for respondents (Messrs. McGovern and Roseman, attorneys).
The opinion of the court was delivered by WEINTRAUB, C.J.
This action was brought on behalf of the infant Tomi Willis and her parents per quod to recover damages for injuries suffered by the child on a visit to High Point Park, a recreational facility of the State. Apparently an admission charge was made between Memorial Day and Labor Day but not the rest of the year. It was on November 6, 1966 that the child, age 3, sustained a traumatic amputation of her arm when she fed sugar to a caged bear. Two or three bears had been exhibited there since the 1930's. Plaintiffs asserted the State was absolutely liable for injuries inflicted by a wild animal thus contained and in any event that the State was negligent because it failed to erect and maintain suitable barriers around the cage, left the cage unattended, and permitted holes to remain in the screening through which the child inserted her arm with the tragic consequence already mentioned.
On motion the trial court gave judgment for defendant upon its plea of sovereign immunity. The Appellate Division *536 reversed, and one judge dissenting, this appeal was taken to us as of right. R. 2:2-1(a).
The majority in the Appellate Division held that the State had waived its immunity from suit. In brief, the thesis was that at one time High Point Park was held by High Point Park Commission, an agency of the State, which was a body politic "with power to sue and be sued," R.S. 13:5-2; that under Taylor v. New Jersey Highway Authority, 22 N.J. 454, 468-471 (1956), the grant of the power to sue and be sued constituted a consent by the Legislature to suits, including actions in tort, against the State agency; and that when in 1945 the Commission went out of existence and its functions were transferred to a department of the State, N.J.S.A. 13:1A-24 and 42, the transfer carried with it the same consent to suit. The dissenting judge in the Appellate Division could not find the Legislature intended a transfer of that consent, and we agree. The case therefore presents the question whether the judiciary should continue to refuse to pass upon the State's tort liability in the absence of a statute consenting to that course.
Recently we held the judiciary should entertain actions against the State on contracts it makes. P, T & L Construction Co. v. Commissioner of Transportation, State of New Jersey, 55 N.J. 341 (1970). We there pointed out that the claim of sovereign immunity involved ultimately a problem of separation of powers, and that while it was conceptually correct for the judiciary to adjudge whether the State ought to satisfy a claim against it, nonetheless the Constitution committed to the other branches the power to decide whether to appropriate moneys to pay a judgment. Thus the willingness of the judiciary to act depended upon whether its judgments would be but idle declarations. We concluded that surely with respect to contracts the State itself makes, we should not assume our judgments would be ignored.
Here we have a claim in tort. In Fitzgerald v. Palmer, 47 N.J. 106 (1966), we declined to decide whether *537 the judiciary should accept tort litigation against the State. There a motorist driving under an overpass was killed by a piece of concrete intentionally thrown by an unknown person from the overpass. The thesis of the complaint was that the Highway Department, in constructing the overpass, should have guarded against such criminal attacks. In explaining why we were not prompted by that claim "to wrestle with the far-reaching proposal that the judiciary give advisory opinions to all who feel aggrieved by what the State does or does not do" (p. 110), we noted the problem involved in delineating the area in which the State should account:
"A private entrepreneur may readily be held for negligent omissions within the chosen ambit of his activity. But the area within which government has the power to act for the public good is almost without limit, and the State has no duty to do everything that might be done. Rather there is a political discretion as to what ought to be done, as to priorities, and as to how much should be raised by taxes or borrowed to that end. If government does act, then, when it acts in a manner short of ordinary prudence, liability could be judged as in the case of a private party. So if a road were constructed of a design imperiling the user, the issue of fault would present no novel problem. But whether a road should have four or six or eight lanes, or there should be dividers, or circles or jughandles for turns, or traffic lights, or traffic policemen, or a speed limit of 50 or 60 miles per hour  such matters involve discretion and revenue and are committed to the judgment of the legislative and executive branches. As to such matters, the question is whether a judge or jury could review the policy or political decisions involved without in effect taking over the responsibility and power of those other branches." [47 N.J. at 109]
Unlike the situation in Fitzgerald v. Palmer, the claim now before us does invite consideration of the basic question of judicial abstention in tort matters, for here, according to the complaint, the State itself generated the risk of injury by caging a ferocious animal without suitable safeguards despite the manifest danger to persons the exhibit was intended to attract.
It is plainly unjust to refuse relief to persons injured by the wrongful conduct of the State. No one seems to defend *538 that refusal as fair. There has been a steady movement away from immunity. In some jurisdictions, the change has been achieved by judicial decision, Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal. Rptr. 89, 359 P.2d 457 (1961); Stone v. Arizona Highway Comm., 93 Ariz. 384, 381 P.2d 107 (1963), and in others by statutes which consented to suit in the courts or provided for relief before an administrative or legislative body. For a survey, see Van Alstyne, "Governmental Tort Liability: A Decade of Change," 1966 U. Ill. L. Forum 919. The Congress, too, has authorized tort claims against the United States. 28 U.S.C. §§ 2674, 2680.
In our State, there has been some progress toward a fair solution. On the legislative side, suits have been authorized against corporate agencies of the State, and the Legislature has not disapproved our holding in Taylor v. New Jersey Highway Authority, supra, 22 N.J., at 468-471, that the consent to suit included consent to liability upon judge-made principles of tort law. In addition, tort claims are regularly considered by a subcommittee of the Joint Legislative Appropriations Committee, although the modest sums appropriated do suggest, on their face at least, a restrained approach with respect to damages. We note, too, that after we expressly held open in Fitzgerald v. Palmer, supra, 47 N.J. 106, the question whether the judiciary should entertain such suits, the Legislature adopted L. 1967, c. 20. There, after reciting that "Recent decisions of the courts of this State interpreting the statutory and case law concerning governmental immunity in negligence actions have indicated the need for a thorough review of the law in this field," the Legislature authorized the Attorney General to study "the present general provisions of the statutes and case law relating to governmental immunity of the State, of counties and municipalities to respond in damages for the negligence of their agents or servants; and to report to the Legislature the results of such study, together with recommendations for amendments and additions to existing statutes intended *539 to modernize procedures relating thereto." The statute reflects the feeling we share, that something positive should be done.
And we add that our courts have already dealt with a segment of this problem. We refer to the liability of counties and municipalities, whose so-called "governmental" activities were in other jurisdictions accorded the State's immunity on the thesis that such activities were performed as agents of the State itself. See Cloyes v. Delaware Tp., 23 N.J. 324, 327 (1957). We have long entertained all types of tort actions against counties and municipalities, and when relief is refused, it is upon the basis of substantive principles of law we think should apply and not upon the proposition that those agencies are immune from suit. Again, it should be noted that the Legislature has not disapproved the doctrine that municipal corporations are suable in tort matters, nor, with one exception, the rules of substantive law applied to them. That exception is L. 1933, c. 460 (N.J.S.A. 40:9-2 and N.J.S.A. 18A:20-35), which was born of a depression and has become an island of immunity.[1]
Perhaps a comprehensive legislative solution has been delayed by the difficulty inherent in expressing a doctrine, and this for the reasons stated above in the excerpt from Fitzgerald v. Palmer. It may well be that the subject so defies precise statement that inevitably the controlling concepts must be developed case by case even if the Legislature does speak. In New York, where a statute (N.Y. Ct. Claims Act, § 8) imposed liability on the State without stated exceptions, the courts nonetheless devised principles which would keep that liability within tolerable limits, and the courts of New York did so in a process no different from that employed in States where liability was generated by case law. Compare *540 Weiss v. Fote, 7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 N.E. 2d 63 (Ct. App. 1960), with Lipman v. Brisbane Elementary School District, 55 Cal.2d 224, 11 Cal. Rptr. 97, 359 P.2d 465 (Sup. Ct. 1961). See Hoy v. Capelli, 48 N.J. 81, 89 (1966), and Visidor Corp. v. Borough of Cliffside Park, 48 N.J. 214, 218-223 (1966), cert. denied, 386 U.S. 972, 87 S.Ct. 1166, 18 L.Ed.2d 132 (1967). This is the same course we followed in dealing with the tort liability of political subdivisions. See the decisions cited above and Milstrey v. City of Hackensack, 6 N.J. 400 (1951); Kress v. City of Newark, 8 N.J. 562 (1952); Hartman v. City of Brigantine, 42 N.J. Super. 247 (App. Div. 1956), aff'd, 23 N.J. 530 (1957); Schwartz v. Borough of Stockton, 32 N.J. 141 (1960); McAndrew v. Mularchuk, 33 N.J. 172 (1960); Peer v. City of Newark, 71 N.J. Super. 12 (App. Div. 1961), certif. den., 36 N.J. 300 (1962); Hayden v. Curley, 34 N.J. 420 (1961); Goldberg v. Housing Authority of City of Newark, 38 N.J. 578 (1962); Amelchenko v. Borough of Freehold, 42 N.J. 541 (1964); Titus v. Lindberg, 49 N.J. 66 (1967); B.W. King, Inc. v. Town of West New York, 49 N.J. 318 (1967); Jackson v. Hankinson, 51 N.J. 230 (1968); Bergen v. Koppenal, 52 N.J. 478 (1968); Miehl v. Darpino, 53 N.J. 49 (1968); Kent v. County of Hudson, 102 N.J. Super. 208 (App. Div. 1968), aff'd, 53 N.J. 546 (1969).
It is time for the judiciary to accept a like responsibility and adjudicate the tort liability of the State itself. For the reasons already given, we will not attempt to express an ultimate doctrine; the constituent principles will be better evolved out of the realities of specific cases. But we do emphasize that the State will not be held liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial cast, nor generally with respect to decisions calling for the exercise of official judgment or discretion. This limitation seems to be uniformly accepted, as we pointed out in Hoy v. Capelli, supra, 48 N.J., at 89, and Visidor Corp. v. Borough of Cliffside Park, *541 supra, 48 N.J., at 218-223. In those cases, we invoked the same limitation with respect to the liability of municipal corporations. See also Amelchenko v. Borough of Freehold, supra, 42 N.J. 541; Fahey v. City of Jersey City, supra, 52 N.J., at 110; Bergen v. Koppenal, supra, 52 N.J. 478; Miehl v. Darpino, supra, 53 N.J. 49.
The remaining question is whether our decision to hear these controversies should be applied retroactively. As to the plaintiffs in this case, the decision should be so applied, and this for the practical reason that case law is not likely to keep up with the needs of society if the litigant who successfully champions a cause is left with only that distinction. But there are strong reasons why we should not accept other claims already in being. There are no appropriations to pay the obligations the courts might declare, nor even, perhaps, to handle the caseload which may ensue. The executive branch will need time to prepare for the additional burden. Then, too, the Legislature may wish to require timely notice of claims to permit an opportunity to investigate. Or the Legislature may choose to fix a monetary limit on recoveries, or to exclude some category of damages, or to adopt a concept of liability different from that of the common law, or to entrust the whole matter to an administrative agency. Mindful as we must be that our dollar judgments will be merely declarations, dependent for their ultimate value upon what the Legislature is willing to do to satisfy them, it is appropriate to postpone the effective date to permit an expression of legislative will, rather than to embark at once upon this new course. Hence, except for the immediate case, the courts will not accept any tort claim arising before January 1, 1971. See Oxford Consumer Discount Co. v. Stefanelli, 104 N.J. Super. 512, 520-521 (App. Div. 1969), aff'd, 55 N.J. 489 (1970); cf. Switz v. Tp. of Middletown, 23 N.J. 580, 598 (1957). If the Legislature establishes an earlier date, we of course will abide by that decision.
*542 The judgment of the Appellate Division is affirmed and the matter remanded for trial.
For affirmance  Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN  7.
For reversal  NONE.
NOTES
[1] The statute reads:

"No county, municipality or school district shall be liable for injury to the person from the use of any public grounds, buildings or structures, any law to the contrary notwithstanding."
See Fahey v. City of Jersey City, 52 N.J. 103 (1968).