**Joseph GARLANGER, Plaintiff,**

v.

**Edward VERBEKE, in his personal capacity; I. Sandor Lengyel, in his personal capacity; Carson Dunbar, in his capacity as Superintendent of the New Jersey State Police; Police Personnel or Officers a/k/a John Does 1–20, Defendants.**

**Civil Action No. 01–3574 (SSB).**

United States District Court, D. New Jersey.

Sept. 27, 2002.

William H. Buckman, Esq., Moorestown, NJ, for Plaintiff.

Joann L. Kagan, Esq., Deputy Attorney General, Trenton, NJ, for Defendants.

**ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND TO STRIKE PURSUANT TO FED. R. CIV. P. 12(f) AND DEFENDANT DUNBAR'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 4(m)**

BROTMAN, District Judge.

Plaintiff Joseph Garlanger instituted this action against the Superintendent of

the New Jersey State Police and state troopers Edward Verbeke and Sandor Lengyel on July 30, 2001, asserting various federal civil rights claims under 42 U.S.C. § 1983 and related state constitutional and tort claims arising out of his arrest, detention, and prosecution on charges of making terroristic threats. Plaintiff requested, and was granted, leave to file an Amended Complaint which was subsequently filed with the Court on February 8, 2002. The Court has jurisdiction over Plaintiff's federal civil rights claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Presently before the Court are Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike pursuant to Fed.R.Civ.P. 12(f) and Defendant Carson Dunbar's motion to dismiss pursuant to Fed.R.Civ.P. 4(m). For the reasons set forth below, Defendants' motions will be granted in part and denied in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following recitation of the relevant facts underlying Plaintiff's claims is drawn exclusively from Plaintiff's Amended Complaint. On August 4, 1999, New Jersey state police officers, Edward Verbeke and Sandor Lengyel, were dispatched to Tri–State Mulch, a business located in Hainesport, New Jersey, based on an allegedly "anonymous" and "unsubstantiated tip" that the business's owner, Joseph Garlanger, had been making threats of violence. (Compl. at ¶ 8.) Garlanger alleges that, "immediately" upon his return from making a delivery, Verbeke, Lengyel, and several unidentified officers grabbed him, pulled him from his truck, threw him to the ground, handcuffed him, placed their feet on his neck, and withdrew their service revolvers and pointed them directly at him. (*Id.* at ¶ 9.) Verbeke and Lengyel then allegedly proceeded to search his premises "without consent, a warrant or other legal basis." (*Id.*) According to Garlanger's complaint, the officers did not question him or "any of his known associates" or otherwise attempt to independently verify the information provided by the anonymous informant before taking action to subdue him and search his establishment. (*Id.* at ¶ 10.) Garlanger was then transported to the New Jersey State Police barracks in Bordentown, New Jersey, where he was allegedly "questioned against his will, harassed, yelled at, and berated." (*Id.* at ¶ 13.) He was ultimately charged with one count of making terroristic threats in violation of N.J.S.A. 2C:12–3 of the New Jersey Criminal Justice Code, (*id.* at ¶ 42)[1], and, lacking the funds needed to post bail, confined in the Burlington County jail pending trial. (*Id.* at ¶ 14.) Garlanger further alleges that, at some point thereafter, Verbeke and Lengyel contacted the mother of his son and advised her to obtain a restraining order against him, and that, as a result, he was "forced to engage in extended family court proceedings" to regain the same visitation and parental rights he had enjoyed with his son before defendants interfered with his personal family affairs. (*Id.* at ¶ 15.) Garlanger was ultimately acquitted on March 16, 2000, of all charges stemming from the August 4, 1999, incident at his place of business. (*Id.* at ¶ 43.)

On July 30, 2001, Garlganger instituted this action against the Superintendent of the New Jersey State Police and troopers

---

1. N.J.S.A. 2C:12–3 establishes criminal liability in the third degree for a person who "threatens to commit any crime of violence with the purpose to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience." N.J.S.A. 2C:12–3(a).

Verbeke and Lengyel seeking compensatory and punitive damages, prospective injunctive relief, and attorney's fees and costs based on a panoply of alleged federal civil rights violations and related state constitutional and tort claims. Counts II, III, IV, V, VI, X, and XI of Plaintiff's Amended Complaint assert federal civil rights claims under 42 U.S.C. §§ 1983, 1985, and 1986, for unlawful arrest, false imprisonment, malicious prosecution, illegal strip search, negligent hiring, training, and supervision, and violations of Plaintiff's parental rights and rights to privacy, due process, and equal protection.[2] Counts VII, VIII, and IX assert common law state tort claims for false arrest, malicious prosecution, and intentional infliction of emotional distress and Count I alleges violations of rights protected under Article I, para. 1 (due process), 5 (equal protection), and 7 (prohibition against unreasonable searches and seizures) of the New Jersey state constitution. Defendants have moved to dismiss under Fed.R.Civ.P. 12(b)(6) on the following grounds: (1) Plaintiff's state law claims are barred as a consequence of Plaintiff's failure to comply with the notice provisions of the New Jersey Tort Claims Act ("TCA"), N.J.S.A. 59:8–1, *et. seq.;* (2) the allegations in Plaintiff's complaint fail to sufficiently state a claim under 42 U.S.C. §§ 1985 and 1986; and (3) Defendant's Verbeke and Lengyel are entitled to qualified immunity from Plaintiff's Section 1983 claims for false arrest, false imprisonment, and malicious prosecution. Defendants also move, pursuant to Fed.R.Civ.P. 12(f), to strike Counts I, X, XI, on the grounds that the "exact same or similar claims" are asserted in Count II of Plaintiff's Amended Complaint. Finally, Defendant Carson Dunbar moves to dismiss Plaintiff's claims for injunctive relief against him, in his capacity as Superintendent of the New Jersey State Police, based on Plaintiff's failure to timely serve him with a summons and copy of the complaint in this matter as required by Fed.R.Civ.P. 4(m).

## II. LEGAL STANDARD GOVERNING A MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." A court's inquiry into the legal sufficiency of a plaintiff's pleadings under this standard is necessarily very limited, as the issue to be decided "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [his] claims." *Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1420 (3d Cir.1997) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). The court must accept as true all of the well-pleaded, material allegations contained in the complaint and any reasonable inferences that can be drawn therefrom. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998). Dismissal of claims under 12(b)(6) should be granted "only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* In examining the legal sufficiency of a litigant's complaint under Rule 12(b)(6), a court may not, as a general matter, give consideration to materials beyond the allegations contained in the pleadings, although matters of public record and exhibits attached to, "explicitly

---

2. Count IV asserts a claim against Carson Dunbar, in his capacity as Superintendent of the New Jersey State Police, for the limited purpose of obtaining prospective injunctive relief. (Compl. at ¶ 25).

relied upon," or "integral to" the complaint may also be taken into account. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## A. NEW JERSEY TORT CLAIMS ACT

■ Defendants' seek dismissal of Plaintiff's state law claims for unlawful force (Count I), wrongful arrest (Counts I and VII), false imprisonment (Count I), malicious prosecution (Counts I and VIII), interference with parental rights (Count I), and intentional infliction of emotional distress (Count IX) based on Plaintiff's failure to comply with the notice of claim provisions of the New Jersey Tort Claims Act ("TCA"), N.J.S.A. 59:8–1, *et. seq.*[3] The TCA, which was originally enacted by the New Jersey legislature in 1972, abrogated the traditional doctrine of sovereign immunity and established a uniform and comprehensive statutory scheme for adjudicating tort claims against public entities and their employees. *See Feinberg v. State of New Jersey*, 137 N.J. 126, 133, 644 A.2d 593 (1994) (observing that the TCA "modifies the doctrine of sovereign immunity and creates limited situations in which parties may assert tort claims against public entities."). In adopting this statutory framework, the state legislature sought "to remedy the haphazard, costly, and inconsistent approach to governmental liability" which had emerged from the body of judicial opinions preceding enactment of the legislation, *Fuchilla v. Layman*, 109 N.J. 319, 343, 537 A.2d 652 (1988) (Handler, J., concurring); *Feinberg*, 137 N.J. at 134, 644 A.2d 593 (citing *S.E.W. Friel Co. v. New Jersey Turnpike Auth.*, 73 N.J. 107, 113, 373 A.2d 364 (1977)), and "to provide compensation to tort victims without unduly interfering with governmental functions and without imposing an excessive burden on taxpayers." *Greenway Development Co., Inc. v. Borough of Paramus*, 163 N.J. 546, 552, 750 A.2d 764 (2000) (citing N.J.S.A. 59:2–1 cmt.).

Consistent with the legislation's goal of restricting governmental liability in tort, the Act provides that, in order to maintain a tort claim against a public entity or public employee, a plaintiff must file a notice of claim with the appropriate public entity within 90 days of the accrual of a cause of action. *See* N.J.S.A. 59:8–8. A plaintiff who fails to file notice with the appropriate state agency within the 90–day period is "forever barred from recovering against [the] public entity or employee." *Id.* Further, while a plaintiff may be permitted to file a notice of claim after the 90–day period, provided he applies to the court for an extension within a year of the date when the claim accrued, *see* N.J.S.A. 59:8–9, "judicial discretion to extend the time for filing of the requisite notice does not survive the passage of one year following the accrual date of the claim." *Hill v. Board of Educ. of Middletown Twp.*, 183 N.J.Super. 36, 39, 443 A.2d 225 (App.Div. 1982); *see also Iaconianni v. New Jersey Turnpike Auth.*, 236 N.J.Super. 294, 298, 565 A.2d 1084 (App.Div.1989). The central purpose of these notice-of-claim provisions is two-fold: "(1) to expedite investigation with the hope of reaching nonjudicial settlement"; and (2) "to protect the public entity's access to current information about the incident giving rise to the claim." *Greenway Development Co., Inc.*, 163 N.J. at 552, 750 A.2d 764 (internal quotations and citations omitted).

---

**3.** The notice of claim provisions of the TCA do not apply to federal civil rights claims brought under 42 U.S.C. § 1983. *See Fuchilla v. Layman*, 109 N.J. 319, 330–31, 537 A.2d 652 (1988). Plaintiff therefore was not re-quired to file a notice of claim with the New Jersey State Police regarding the claims set forth in Counts II, IV, V, VI, X, and XI of his Amended Complaint.

In the instant case, all of the alleged events which form the basis of Plaintiff's state tort claims occurred between August 4, 1999 (Compl. at ¶¶ 7, 8) and March 16, 2000 (*Id.* at ¶ 43). Thus, the 90–day statutory period within which Plaintiff was required to file the requisite notice of claim with the New Jersey State Police expired no later than June 16, 2000. In addition, the one year period in which Plaintiff could seek leave of the court to file a late notice of claim expired on March 16, 2001.

Plaintiff concedes that the state common law tort claims contained in Counts VII (false arrest), VIII (malicious prosecution), and IX (intentional infliction of emotional distress) of his Amended Complaint are subject to the TCA's notice requirements, *see Epstein v. State,* 311 N.J.Super. 350, 709 A.2d 1353 (App.Div.1998) (affirming the dismissal of malicious prosecution and infliction of emotional distress claims based on plaintiff's failure to demonstrate the "extraordinary circumstances" necessary to justify the filing of a late tort claims notice); *Michaels v. State of New Jersey,* 955 F.Supp. 315, 329 (D.N.J.1996) (applying TCA's notice provisions to malicious prosecution claim); *Pisano v. City of Union City,* 198 N.J.Super. 588, 590, 487 A.2d 1296 (1984) (observing that while the TCA "does not immunize law enforcement officials from charges of false arrest and false imprisonment . . . claims asserting such wrongs must be presented to the [appropriate] public entities no later than the ninetieth day . . . after the accrual of the cause of action"), and does not dispute that he has neither filed a proper notice of claim with the New Jersey State Police, nor requested an extension of the period in which to do so. Plaintiff does not, therefore, oppose dismissal of these claims. (Pl.'s Opp. Br. at 3, n. 3).

Plaintiff does, however, oppose the dismissal of his claims in Count I for unlawful force, wrongful arrest, false imprisonment, and unlawful interference with parental rights to the extent that such claims allege "various tortious violations" of rights protected under Art. I, para. 1 (due process) and 7 (right to be free from unreasonable searches and seizures) of the New Jersey Constitution. (Pl.'s Br. at 5). While the New Jersey Supreme Court has not had occasion to specifically address the applicability of the TCA's notice requirements to "constitutional torts" of this particular variety, Plaintiff's position finds support in Justice Handler's concurring opinion in *Fuchilla v. Layman,* 109 N.J. 319, 537 A.2d 652 (1988), and the Supreme Court's more recent decision in *Greenway Development Co., Inc. v. Borough of Paramus,* 163 N.J. 546, 750 A.2d 764 (2000). In *Fuchilla,* the Court considered the applicability of the TCA's notice provisions to discrimination claims brought pursuant to the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5–1, *et. seq.* Fuchilla, a former employee of the University of Medicine and Dentistry of New Jersey instituted a sexual harassment suit against the university and its Board of Trustees under both the Civil Rights Act, 42 U.S.C. § 1983, and the New Jersey LAD. The Appellate Division reversed a ruling by the trial court dismissing Fuchilla's LAD claim based on her failure to satisfy the notice provisions of the TCA and the Supreme Court affirmed holding, based on a "reading of the history, purpose, and provisions of the [TCA and the LAD] . . . that the legislature did not intend that claims of discrimination be subject to the notice requirements of the [Tort Claims Act]." *Fuchilla,* 109 N.J. at 336, 537 A.2d 652. In so holding, the Court overruled a decision by the Chancery Division, *Lloyd v. Borough of Stone Harbor,* 179 N.J.Super. 496, 512, 432 A.2d 572 (1981), in which that court had concluded that a sexual discrimination claim seeking "damages caused by a violation of constitutional rights" afforded by

the New Jersey Constitution was subject to the notice provisions of the Tort Claims Act. *See Fuchilla,* 109 N.J. at 333, 537 A.2d 652; *see also, Greenway Development Co., Inc.,* 163 N.J. at 554, 750 A.2d 764 (observing that the decision in *Lloyd* was "effectively overruled" by the Court's decision in *Fuchilla* and cannot be relied upon "for the proposition that the notice of claim provision of the TCA applies to 'constitutional torts.' ").

In a concurring opinion, Justice Handler noted that the TCA, by its terms, is primarily concerned with civil actions seeking damages for "ordinary negligence" and other "tortious conduct involving fault in the sense of a want of reasonable care," *Fuchilla,* 109 N.J. at 339, 537 A.2d 652, and "disavows any remedial purpose to vindicate societal interests or to rectify public or governmental misconduct to protect any individual constitutional interest or civil right." *Id.* at 344, 537 A.2d 652. The enactment of the TCA, he recounted, was essentially a legislative response to the Court's abrogation of the State's sovereign immunity in *Willis v. Department of Conservation and Econ. Dev.,* 55 N.J. 534, 264 A.2d 34 (1970). *See id.* at 334, 537 A.2d 652; *see also Greenway Development Co.,* 163 N.J. at 556–57, 750 A.2d 764:

> In *Willis,* the Court reviewed previous judicial limitations on the use of sovereign immunity as a defense. It is instructive to note that all the cases cited involved claims of ordinary negligence and most of the others involved allegations that governmental negligence created conditions that resulted in death or injury. Other cases involved situations where negligent supervision on the part of government officials led to the injury of third persons. These cases represent not only the background against which the Legislature acted when it drafted the Act, but many of them also stood for particular propositions of law, which the Legislature incorporated into the Act.

> None of these cases involved anything more than ordinary negligence.

*Fuchilla,* 109 N.J. at 343, 537 A.2d 652 (internal citations omitted). In joining the majority's holding, Justice Handler emphasized that the fact that "none of the plethora of judicial decisions that form the matrix of the Tort Claims Act involved a violation of a civil right" demonstrates "[q]uite clearly [that] the Tort Claims Act was not needed to structure liability—or immunity—for such claims." *Id.*

In *Greenway Development Co., Inc.,* the Supreme Court again considered the nature and character of the claims subject to the notice-of-claim provisions of the Tort Claims Act. 163 N.J. at 551, 750 A.2d 764. The case involved a claim for "inverse condemnation" brought by a landowner against the borough, mayor, and zoning officials seeking compensation for actions which allegedly amounted to a unconstitutional "taking" under both Article I, para. 20 of the New Jersey state constitution and the Fifth Amendment to the United States Constitution. *Id.* at 549–51, 553, 750 A.2d 764. The Court, affirming the decision of the Law Division and applying reasoning very similar to that employed in Justice Handler's concurring opinion in *Fuchilla,* rejected Defendants' argument that "an 'injury' under the TCA includes harm to constitutional rights, such as inverse condemnation." *Id.* at 551–52, 750 A.2d 764; *see also id.* at 558, 750 A.2d 764 (observing that the "constitutional prohibition against unconstitutional takings is self-executing, in the sense that such claims arise independently of the TCA."). The Court observed, as had Justice Handler, that the TCA "disavows any remedial purpose to vindicate societal interests ... or to protect *any individual constitutional interest or civil right.*" *Id.* at 557, 750 A.2d 764 (quoting *Fuchilla,* 109 N.J. at 344, 537 A.2d 652 (Handler, J., concurring)) (emphasis added). The Court further noted that the fact that all of the

cases cited in *Willis* as examples of exceptions to the doctrine of sovereign immunity involved claims of negligence "strongly suggests" that compliance with the Act's notice provisions is not a prerequisite to seeking damages for inverse condemnation under either the state or federal constitution. *Id.* at 556–57, 750 A.2d 764. In reaching its conclusion, the Court also relied on the United States Supreme Court's decision in *Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (holding that the notice requirements of state tort claims legislation do not apply to actions brought in state court alleging violations of federal constitutional rights under 42 U.S.C. § 1983), interpreting that decision, as have courts in other jurisdictions, as "render[ing] state notice-of-claim laws inapplicable in actions alleging violations of federal *as well as state constitutional rights,* such as inverse condemnation." *Greenway*, 163 N.J. at 558, 750 A.2d 764. (emphasis added).

■ The civil rights claims asserted in Count I of Plaintiff's Amended Complaint, like claims of gender discrimination and inverse condemnation, essentially seek compensation for violations of constitutionally-protected rights and interests which exist independent of the Tort Claims Act. Moreover, as Justice Handler's concurrence and the Court's decision in *Greenway* suggest, the fact that none of the cases cited by the Court in *Willis*, the impetus for the legislature's enactment of the Tort Claims Act, involved claims for anything more than ordinary negligence strongly suggests that the legislature never intended to subject constitutionally-based torts, such as civil rights claims and claims for inverse condemnation, to ·the notice-of-claim provisions of the TCA. *Cf., Estate of McGrath v. North Jersey District Water Supply Commission,* 224 N.J.Super. 563, 570, 540 A.2d 1350 (Law Div.1986) (noting that the "Tort Claims Act does not apply to several of [plaintiff's]

causes of action, such as inverse condemnation and violation of civil rights."). Accordingly, to the extent that the claims contained in Count I of Plaintiff's Amended Complaint seek damages based on Defendants' alleged violations of civil rights protected by the New Jersey Constitution, the Court will deny that part of Defendants' motion which seeks to dismiss such claims based on Plaintiff's failure to comply with the notice-of-claim provisions of the New Jersey Tort Claims Act.

## B. FEDERAL CIVIL RIGHTS CLAIMS UNDER 42 U.S.C. §§ 1985 AND 1986

■ Defendants' contend that the allegations in Plaintiff's Amended Complaint fail to state a claim under 42 U.S.C. §§ 1985 (Count V) and 1986 (Count III). Section 1985 does not itself create any substantive rights, but rather "creates a cause of action under rather limited circumstances against both private and state actors," *Brown v. Philip Morris, Inc.,* 250 F.3d 789, 805 (3d Cir.2001), for conspiring to violate federal rights and privileges protected by the Constitution and federal statutes. *White v. Williams,* 179 F.Supp.2d 405, 421 (D.N.J.2002) (Pisano, J.) (citing *Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 376, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979)). For a Section 1985 claim to survive a motion to dismiss, a plaintiff must allege: "(1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir.1997) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 91, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). Mere allegations of conspiracy which are lacking in any factual speci-

ficity will not suffice to survive a motion to dismiss. *See Jaco v. Bloechle,* 739 F.2d 239, 245 (6th Cir.1984); *Burnett v. Short,* 441 F.2d 405, 406 (5th Cir.1971). Plaintiff's Complaint contains nothing more than terse, conclusory allegations that Defendants conspired with each other to violate his constitutional rights and does not allege that any racial or class-based invidious discriminatory animus lay behind Defendants' actions. Plaintiff has not, therefore, alleged facts sufficient to state a cause of action under Section 1985.

■ Section 1986 "is a companion to section 1985(3) and provides a cause of action against persons who, knowing that a violation of section 1985(3) is about to be committed and possessing the power to prevent its occurrence, fail to take action to frustrate its execution." *White,* 179 F.Supp.2d at 421 (citing *Rogin v. Bensalem Tp.,* 616 F.2d 680, 696 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981)). "[T]ransgressions of § 1986 by definition depend on a preex-

isting violation of § 1985." *Clark v. Clabaugh,* 20 F.3d 1290, 1295 (3d Cir.1994). The allegations in Plaintiff's complaint which, as the Court has noted, fail to set forth a cause of action under 1985, therefore, necessarily also fail to state a valid claim under Section 1986. *See Karim–Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 626 (9th Cir.1988) ("A claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985."). Accordingly, the Court will grant Defendants' motion to dismiss Plaintiff's federal civil rights claims under 42 U.S.C. §§ 1985 (Count V) and 1986 (Count III).

## C. QUALIFIED IMMUNITY FROM LIABILITY UNDER 42 U.S.C. § 1983

■ Defendants also move to dismiss Plaintiff's Section 1983 claims for unlawful arrest (Count V), false imprisonment (Count II), and malicious prosecution (Count X) on the grounds of qualified immunity.[4] Defendants, as law enforcement

---

4. In support of their motion to dismiss on the basis of qualified immunity, Defendants make frequent reference to the contents of several documents which have been submitted along with their motion papers, including Trooper Sandor Lengyel's investigative report, a "supplemental" investigative report submitted by Trooper Raymond Couts, and an Affidavit of Probable Cause signed by Trooper Lengyel. (*See* Cert. of Joann L. Kagan, Esq.). Plaintiff contends that it would be improper for the Court to consider this documentary evidence in resolving Defendants' motion to dismiss and has only addressed the contents of these documents to the extent necessary to respond to the arguments put forth in Defendants' briefs. Generally, with the exception of "certain narrowly defined types of materials," *In Re Rockefeller Center Properties, Inc.,* 184 F.3d 280 (3d Cir.1999); *see, e.g., In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 ("document[s] *integral to or explicitly relied upon* in the complaint"); *PBGC v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993) ("indisputably authentic documents that a de-

fendant attaches to a motion to dismiss if the plaintiff's claims are based on the document"), "if matters outside the pleadings are presented to the [court] on a motion under Rules 12(b)(6) or 12(c), and the court does not exclude them, the motion must be considered as one under Rule 56 and determined in accordance with summary judgment principles" *Kulwicki v. Dawson,* 969 F.2d 1454, 1462 (3d Cir.1992) (quoting 6 Moore's Federal Practice ¶ 56.02[3], at 56–57 (1991)); *see also* Fed.R.Civ.P. 12(b). The decision to consider evidence outside the complaint and convert a motion to dismiss into one for summary judgment is generally committed to the Court's discretion under Rule 56. *Id.* (citing 5A Wright & Miller, Federal Practice and Procedure § 1366, at 491 (1990)). The parties must, however, be given adequate notice that the motion to dismiss will be considered under Rule 56. *See Rose v. Bartle,* 871 F.2d 331, 342 (3d Cir.1989); *see also* Fed.R.Civ.P. 12(b) ("[A]ll parties shall be given a reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

officers employed by the State of New Jersey, presumptively enjoy qualified immunity for actions, such as arrests, which are taken within the scope of their discretionary authority. *See Wilson v. Layne*, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). The doctrine of qualified immunity shields government officials "from suits seeking damages under § 1983 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Donahue v. Gavin*, 280 F.3d 371, 377 (3d Cir.2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "[I]n § 1983 cases involving alleged violations of the Fourth Amendment, ... the inquiry is whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession" at the time of the alleged violation. *Sharrar v. Felsing*, 128 F.3d 810, 827 (3d Cir.1997) (citing *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam)). Thus, police officers who, at the time of an alleged Fourth Amendment violation, had probable cause for their actions or "who reasonably but mistakenly conclude[d] that their conduct comport[ed] with the requirements of the Fourth Amendment are entitled to immunity." *Sharrar*, 128 F.3d at 826 (quoting *Hunter*, 502 U.S. at 227, 112 S.Ct. 534) (additional citations omitted). "In this way, the qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Sharrar*, 128 F.3d at 826 (quoting *Hunter*, 502 U.S. at 229, 112 S.Ct. 534) (additional citations omitted).

■ In determining whether a police officer is entitled to qualified immunity, both the existence of a clearly established right and the objective reasonableness of the officer's actions are questions of law for the Court to decide, *see Luthe v. City of Cape May*, 49 F.Supp.2d 380, 389 (D.N.J. 1999) (Orlofsky, J.) (citing *Sharrar*, 128 F.3d at 828), but any disputed issues of historical fact relevant to the court's determination must be submitted to a jury. *See Curley v. Klem*, 298 F.3d 271, 278 (3d Cir.2002); *see also, Sharrar*, 128 F.3d at 828. Because the qualified immunity doctrine provides public officials with "immunity from suit and not simply trial," a court's determination regarding the availability of qualified immunity should generally be resolved "at the earliest possible stage of the litigation." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir.1995) (citations omitted); *see also Curley*, 298 F.3d at 277.

■ When a government official raises qualified immunity as a defense to an action under section 1983, the court must, a threshold matter, first determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Wilson*, 526 U.S. at 609, 119 S.Ct. 1692 (1999) (quoting *Conn. v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999)). Plaintiff asserts three separate section 1983 claims for violations of the Fourth Amendment: (1) wrongful arrest; (2) false imprisonment; and (3) malicious prosecution. As a key element of each of these claims, Plaintiff must establish that Defendants acted without probable cause. *See Luthe*, 49 F.Supp.2d at 388 (citing *Sharrar*, 128 F.3d at 817–18; *Groman v. Township of Manalapan*, 47 F.3d 628, 636

Because the parties have not been notified that Defendants' motion will be considered under Rule 56 and Plaintiff has not been afforded a reasonable opportunity to present any evidentiary materials necessary to respond to such a motion, the Court shall not consider any of the attached exhibits in resolving Defendants' motion to dismiss.

(3d Cir.1995); *Lee v. Mihalich,* 847 F.2d 66, 69–70 (3d Cir.1988)). To state a claim for unlawful arrest under section 1983, a plaintiff must plead that he was arrested by a state actor without probable cause. *Sharrar,* 128 F.3d at 817–18. Moreover, "where the police lack probable cause to make an arrest, the arrestee [also] has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman,* 47 F.3d at 636 (citing *Thomas v. Kippermann,* 846 F.2d 1009, 1011 (5th Cir.1988)). To state a section 1983 claim for malicious prosecution under the Fourth Amendment, Plaintiff must likewise allege that Defendants initiated criminal proceedings against him without probable cause. *See Palma v. Atlantic County,* 53 F.Supp.2d 743, 755 (D.N.J. 1999) (Orlofsky, J.). More specifically, Plaintiff must allege that: "(1) defendants initiated a criminal proceeding against [him]; (2) which resulted in a seizure; (3) the criminal prosecution ended in [his] favor; (4) the criminal prosecution was initiated without probable cause; and (5) defendants acted maliciously or for a purpose other than bring the criminal defendant to justice." *Luthe,* 49 F.Supp.2d 380, 392 (citing *Gallo v. City of Philadelphia,* 161 F.3d 217, 222 (3d Cir.1998)).

Probable cause is "defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Sharrar,* 128 F.3d at 817–818 (citing *Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)). "This standard is meant to safeguard citizens from rash and unreasonable interferences with privacy and to provide leeway for enforcing the law in the .community's protection." *Sharrar,* 128 F.3d at 817–18 (citations omitted).

■■ In his Amended Complaint, Plaintiff alleges that he was arrested and detained by Defendants based solely on an "anonymous" and "unsubstantiated" tip that he had been making threats of violence. (Compl. at ¶ 8). He further alleges that Defendants did not question him or otherwise make any attempt to independently verify the reliability of the information obtained from the "anonymous" informant before acting to subdue him and place him under arrest. (*Id.* at ¶ 10). The Supreme Court has recognized that a tip from an anonymous informant may, under certain circumstances, provide probable cause to arrest and detain the target of the tip. *See Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Both the Supreme Court and the Third Circuit have, however, emphasized the importance of independent police work to corroborate the information contained in a tip communicated by an informant whose identity is unknown. *See Gates,* 462 U.S. at 241, 103 S.Ct. 2317; *see also U.S. v. Nelson,* 284 F.3d 472, 480 (3d Cir.2002). An anonymous tip which "provides virtually nothing from which one might conclude that [the informant] is either honest or his information reliable" and which fails to supply any information providing an independent basis for suspecting criminal activity will, by itself, not be sufficient to establish probable cause to believe that a criminal offense has been or is being committed by the target of the tip. *See Alabama v. White,* 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *Nelson,* 284 F.3d at 479–80; *see also, Matasavage v. Corby,* 2000 WL 1839138 at *7 (M.D.Pa. October 13, 2000) (observing that because "unsubstantiated rumors alone cannot be the basis for probable cause ... [i]f Defendant based his arrest solely upon the anonymous informants, Defendant would not have probable cause"). Plaintiff's allegations are therefore sufficient, on their face, to support a claim for unlawful arrest and false imprisonment under section 1983.

■■ Plaintiff's complaint further alleges that Defendants proceeded, based on

the same "anonymous" and "unsubstantiated" tip, to file charges against him (Compl. at ¶ 42), that they did so "maliciously" (*id.*), and that he was ultimately cleared of all charges related to his arrest on August 4, 1999. (*Id.* at ¶ 43.) These allegations are sufficient to state a claim for malicious prosecution under section 1983. *See Palma,* 53 F.Supp.2d at 758.[5] Accordingly, the Court concludes that Plaintiff's Amended Complaint sufficiently alleges violations of his right under the Fourth Amendment to be free from arrest, detention, and criminal prosecution absent probable cause.

 Having concluded that Plaintiff's Amended Complaint sufficiently alleges violations of Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures, the Court must next determine "whether [D]efendant[s][are] entitled to qualified immunity on the grounds that [their] conduct did 'not violate clearly established statutory or constitutional rights *of which a reasonable person would have known.'*" *Larsen,* 154 F.3d at 86–87 (citing *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727) (emphasis added). In cases, such as that currently before the Court, involving claims for unlawful arrest, false imprisonment, and malicious prosecution, the availability of qualified immunity "turns on whether the police officers reasonably but mistakenly concluded that probable cause existed to arrest, detain

and initiate criminal prosecution." *Palma,* 53 F.Supp.2d at 769 (citing *Orsatti,* 71 F.3d at 483) (additional citations omitted). Because Defendants have raised the defense of qualified immunity in the context of a Rule 12(b)(6) motion to dismiss, the only facts upon which the Court can properly rely in determining the "objective reasonableness" of Defendants' belief that probable cause existed to arrest, detain, and prosecute Plaintiff are those allegations of fact which are contained in the Amended Complaint. *See Palma,* 53 F.Supp.2d at 743. Moreover, the issue to be decided by the Court at this stage of the litigation is limited to whether, accepting Plaintiff's allegations as true and affording him the benefit of all reasonable inferences that can be drawn therefrom, "there is any set of facts [he] can prove that would support a denial of immunity." *Kulwicki v. Dawson,* 969 F.2d 1454, 1462 (3d Cir.1992) (citing *Robb v. Philadelphia,* 733 F.2d 286 (3d Cir.1984)). Applying this standard and drawing all reasonable inferences in Plaintiff's favor, the Court is unable to conclude that the facts as alleged in the Amended Complaint are insufficient to support a finding that no reasonable police officer could have believed that probable cause existed to arrest, detain, and prosecute Plaintiff for the felony offense of making terroristic threats. The Court must, therefore, deny Defendants' motion to dismiss on the basis of qualified immunity.[6]

---

**5.** When considering the legal sufficiency of Plaintiff's allegations of malicious prosecution on a 12(b)(6) motion to dismiss, the element of malice may be inferred from allegations sufficiently establishing an absence of probable cause. *See Shurelds v. Silo,* 1987 WL 8559 at *2 (E.D.Pa.1987) (citing *Earl v. Winne,* 14 N.J. 119, 134, 101 A.2d 535 (1953)).

**6.** While the Court is of the opinion that resolution of the issues presented by Defendants' qualified immunity defense would be premature at this early stage of the litigation, the

Court is mindful of the need to determine immunity questions at the earliest possible stage in the litigation and makes no intimation regarding whether Defendants would, at the conclusion of a period of limited discovery, be able to establish their entitlement to qualified immunity on a motion for summary judgment. The Court's determination with regard to the objective reasonableness of Defendants' belief that probable cause existed to arrest, detain, and charge Plaintiff with making terroristic threats will depend on the nature and source of the allegedly "anonymous" tip and the other facts known to Defendants

## III. DEFENDANTS' MOTION TO STRIKE PURSUANT TO FED. R. CIV. P. 12(f)

█ Defendants' move, pursuant to Fed.R.Civ.P. 12(f), to strike Counts I, X, and XI on the basis that "exact same or similar claims" are asserted in Count II of Plaintiff's Amended Complaint. The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint "any redundant, immaterial, impertinent, or scandalous matter" which will not have any possible bearing on the outcome of the litigation. *See Bristol–Myers Squibb Company v. Ivax Corporation,* 77 F.Supp.2d 606, 619 (D.N.J.2000) (Walls, J.) (citing *Glenside West Corp. v. Exxon Co., U.S.A.,* 761 F.Supp. 1100, 1114–15 (D.N.J. 1991)). Because of the drastic nature of the remedy, however, motions to strike are usually "viewed with disfavor" and will generally "be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Tonka Corp. v. Rose Art Industries, Inc.,* 836 F.Supp. 200, 217 (D.N.J. 1993).

Count II of Plaintiff's Amended Complaint asserts claims for various violations of Plaintiff's federal civil rights under 42 U.S.C. § 1983. (Compl. at ¶ 19). Counts X briefly expands on these averments and asserts an additional section 1983 claim for malicious prosecution. Counts V and XI, which assert claims under section 1983 for false arrest and the alleged "negligent screening, hiring, training, supervising, disciplining and retention of dangerous and discriminatory police officers," merely restate claims contained in Count I and are, therefore, unnecessarily redundant. Accordingly, the Court reads these counts in tandem as asserting a set of alleged violations of Plaintiff's federal civil rights under section 1983. In the interests of streamlining the pleadings and removing this redundant clutter, the factual allegations and claims asserted in Counts V, X and XI will be stricken and merged with Count II of Plaintiff's Amended Complaint.

█ Defendant contends that the state constitutional claims asserted in Count I are similarly subsumed within Count II. The Court disagrees. Claims under section 1983, which creates a statutory vehicle for remedying violations of rights created by federal law, and the provisions of the New Jersey state constitution represent distinct and independent causes of action. *See, e.g., Potts v. City of Philadelphia,* 2002 WL 2003056 (E.D.Pa. August 29, 2002). The Court will therefore deny Defendants' motion to strike the state law claims contained in Count I of Plaintiff's Amended Complaint.

## IV. DEFENDANT CARSON DUNBAR'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P 4(m)

█ Defendant Carson Dunbar contends that Count Four of Plaintiff's Amended Complaint which seeks prospective injunctive relief against him in his capacity as Superintendent of the New Jersey State Police should be dismissed because he has never been properly served

at the time of the alleged Fourth Amendment violations. *Compare, e.g., U.S. v. Valentine,* 232 F.3d 350 (3d Cir.2000) (concluding that a tip from a man who approached two police officers on the street but refused to identify himself was sufficient to justify a investigative stop where the informant had just witnessed a crime and the officers had an opportunity to observe him and assess his credibility) *with U.S. v. Roberson,* 90 F.3d 75, 80 (3d Cir.1996) (concluding that "anonymous and barebones tip" that could have been generated by any caller by simply "looking out his window" was insufficient to provide either probable cause for arrest or reasonable suspicion for a investigative stop).

with a summons and a copy of the complaint in this action as required by Federal Rule of Civil Procedure 4(m). Rule 4(m) provides in pertinent part:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

The Third Circuit has construed Rule 4(m) as requiring a court to extend time for service where the plaintiff demonstrates good cause. *See McCurdy v. Amer. Bd. of Plastic Surgery*, 157 F.3d 191, 196 (3d Cir.1998); *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). For purposes of Rule 4(m), "good cause" has been defined as being tantamount to "excusable neglect," under Fed. R. Civ.P. 6(b)(2), which requires "a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097.(3d Cir.1995). Because the "primary focus" in determining whether good cause exists "is on the plaintiff's reasons for not complying with the time limit in the first place," the "[a]bsence of prejudice alone can never constitute good cause to excuse late service [of the complaint on the defendant.]." *Id.* Absent a showing of good cause, the decision whether to extend the time for service or to dismiss the complaint falls within the court's sound discretion. *Id.*

Plaintiff's original complaint in this matter was filed on July 30, 2001 and asserted, *inter alia*, a claim under section 1983 seeking injunctive relief against Defendant Carson Dunbar in his capacity as Superintendent of the New Jersey State Police.[7] Pursuant to Rule 4(m), Plaintiff was required to serve Dunbar with a summons and copy of this complaint no later than November 28, 2001. On February 22, 2002, approximately two and a half months after the expiration of Rule 4(m)'s 120 day period for serving Plaintiff's original complaint, Defendant Dunbar filed the instant motion to dismiss Plaintiff's complaint based on Plaintiff's failure, as demonstrated by the Court's docket in this matter, to comply with Rule 4(m)'s service requirements. Plaintiff's opposition brief is entirely silent with respect to Defendant Dunbar's motion. The Court will, therefore, treat Defendant's motion as unopposed. Moreover, more than seven months have passed since the filing of Plaintiff's first Amended Complaint and Plaintiff has, according to the Court's docket, similarly failed to either serve Dunbar with a copy of this complaint or make an application to the Court to extend the time for serving process.[8] Accordingly, because more than thirteen months have passed since the filing of Plaintiff's original complaint against Defendant Dunbar and Plaintiff has demonstrated no reasonable basis for failing to comply with the service requirements of Rule 4(m), the Court will dimiss all claims seeking relief

---

7. Although Plaintiff's original complaint asserted a section 1983 claim for injunctive relief against Dunbar, the complaint failed to specifically identify Dunbar as a named defendant in this action. Plaintiff's Amended Complaint remedied this deficiency, however, along with numerous other spelling and typographical mistakes.

8. Plaintiff's first Amended Complaint was filed on February 8, 2002, two weeks before the filing of the motions presently before the Court. (*see* Docket entry at 18).

against Defendant Dunbar in his capacity as Superintendent of the New Jersey State Police and dismiss him as a party to the above-entitled action. *See Fernandez v. United States, Internal Revenue Service,* 1994 WL 591556 (D.N.J.1994) (Politan, J.) (dismissing all claims against defendant where plaintiffs failed to offer any explanation for their failure to properly serve defendant and did not otherwise respond to defendant's motion to dismiss pursuant to Rule 4(m)).

## V. CONCLUSION

For the reasons stated above, Defendants' motions will be granted in part and denied in part. Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) will be granted as to Counts III, VII, VIII, and IX, and Plaintiff's claim under 42 U.S.C. § 1985 in Count V, and denied with respect to Counts I, II, and X, and Plaintiff's claim for false arrest under 42 U.S.C. § 1983 in Count V. Defendants' motion to strike will be denied with respect to Count I. The Court will, however, strike Counts V, X, and XI, and merge the claims and allegations contained therein with Count II. Defendant Carson Dunbar's motion to dismiss pursuant to Fed.R.Civ.P. 4(m) will be granted and he will be dismissed as a party to this action. The Court will enter an appropriate order.

**ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND TO STRIKE PURSUANT TO FED. R. CIV. P. 12(f) AND DEFENDANT DUNBAR'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 4(m)**

THIS MATTER having come before the Court on Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and to strike pursuant to Fed.R.Civ.P. 12(f) and Defendant Carson Dunbar's motion to dismiss pursuant to Fed.R.Civ.P. 4(m);

The Court having considered the submissions of the parties; and

For the reasons set forth in the Court's opinion of this date;

**IT IS** on this 27th day of September, 2002, HEREBY·

**ORDERED** that the part of Defendants' motion seeking the dismissal of Counts III, VII, VIII, and IX, and Plaintiff's conspiracy claim under 42 U.S.C. § 1985 in Count V pursuant to Fed.R.Civ.P. 12(b)(6) is **GRANTED**;

**IT IS FURTHER ORDERED THAT** the part of Defendants' motion seeking the dismissal of Counts I, II, and X, and Plaintiff's claim for false arrest under 42 U.S.C. § 1983 in Count V is **DENIED**;

**IT IS FURTHER ORDERED THAT** the part of Defendants' motion seeking to strike Count I of Plaintiff's Amended Complaint is **DENIED**;

**IT IS FURTHER ORDERED THAT** the part of Defendants' motion seeking to strike Count X and XI of Plaintiff's Amended Complaint is **GRANTED** provided that the allegations contained in those counts shall be treated as if originally pled as part of Count II;

**IT IS FURTHER ORDERED THAT** the claim for false arrest under 42 U.S.C. § 1983 contained in Count V shall similarly be stricken and merged with Count II;

**IT IS FURTHER ORDERED THAT** Defendant Carson Dunbar's motion to dismiss pursuant to Fed.R.Civ.P. 4(m) is **GRANTED** and he is hereby dismissed as a party to the above-entitled action.

No costs.